**WILK AUSLANDER LLP**
1515 Broadway, 43rd Floor
New York, NY 10036
(212) 981-2300
Eric J. Snyder, Esq.

*Proposed Counsel for the Debtor*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

| | |
|---|---|
| In re: | Chapter 11 |
| 45 JOHN LOFTS, LLC, | Case No. 16-12043(SHL) |
| Debtor. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**APPLICATION FOR ENTRY OF AN ORDER
PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004
DIRECTING RIVERSIDE ABSTRACT LLC TO PRODUCE DOCUMENTS**

**TO:    THE HONORABLE SEAN H. LANE,
        UNITED STATES BANKRUPTCY JUDGE:**

45 John Lofts, LLC, the above-captioned debtor and debtor-in-possession (the "Debtor") by its proposed counsel, Wilk Auslander LLP, respectfully submits this application (the "Application") pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rule 2004") for entry of an order directing the production of documents by Riverside Abstract LLC ("Riverside"), as more particularly set forth in Schedule A to the subpoena attached to this Application as Exhibit A (the "Subpoena"). In support of the Application, the Debtor states as follows:

**RELIEF REQUESTED**

1.    As detailed in the declaration of the Debtor's Managing Member, Chun Peter Dong ("Dong"), submitted pursuant to Local Bankruptcy Rule 1007-2 [ECF No. 2], this case was filed to address the losses suffered by the Debtor due to the fraud, conversion, and breach of

1

fiduciary duty by Samuel Sprei ("Sprei") and Chaim Miller ("Miller"), former members of the Debtor.

2.  The Debtor is investigating whether grounds exist to commence an adversary proceeding pursuant to §§ 544-550 of the Bankruptcy Code and New York Debtor & Creditor Law § 270, *et. seq.* to recover a portion of the down payment provided to the Debtor under the Contract of Sale (defined below) and which Miller and Sprei caused the Debtor to fraudulently convey to numerous transferees (the "Avoidance Claims"), some of who may be presently unknown to the Debtor.

3.  As explained below, Miller and Sprei used the down payment to purchase property, in their individual capacities, in a separate and unrelated transaction. Riverside served as title company and disbursing agent both in the transaction involving the Contract of Sale and the separate, unrelated transaction. The purpose of this Application is to obtain information about the transfers by Riverside, which included transfers of the misappropriated down payment.

## BACKGROUND

4.  On July 19, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (the "Court").

5.  On September 19, 2014, Miller executed a contract of sale ("Contract of Sale") with HS 45 John, LLC ("HS 45 John"), purportedly on behalf of the Debtor, to sell the real property located at 45 John Street, New York, NY (the "Premises") to HS 45 John. Miller executed the Contract of Sale without the knowledge or consent of Dong, or the Debtor's other members who collectively hold a 41 percent interest in the Debtor (the "41% Investors"). A copy of the Contract of Sale is attached hereto as Exhibit B. Miller and Sprei's unlawful conduct in

2

00922114.1

connection with the Contract of Sale and the resulting lawsuits commenced by Dong and the 41% Investors seeking to enjoin the closing and void the Contract of Sale, caused HS 45 John to file a voluntary Chapter 11 petition with this Court on February 20, 2015 (the "HS 45 John Bankruptcy"). *In re HS 45 John LLC*, 15-10368(SHL).

6. At the center of the HS 45 Bankruptcy and the claims of Dong and the 41% Investors were the circumstances surrounding the use and transfer by Miller and Sprei of the $14,330,000 down payment[1] (the "Down Payment") provided by HS 45 John to the Debtor under the Contract of Sale. Under the Contract of Sale, Riverside served as the title company and was responsible for making disbursements of the Down Payment to various entities in accordance with a "Direction Letter," signed by Miller, attached to the Contract of Sale as an exhibit.[2] A copy of the Direction Letter is attached hereto as Exhibit C. The Direction Letter provided that $13,333,000 was to be transferred to Riverside and $1,000,000 paid to Meridian Capital ("Meridian"), the purported broker to the transaction. The $13,333,000 of the Down Payment was disbursed by Riverside as follows: (1) $9,750,159.00 to be "wire[d]" at the direction of Seller" (2) a total of $2,850,000 to Goldberg Weprin Finkel Goldstein LLP (attorney for HS 45 John) for interest reserve payments, reimbursement of cost of funds, advance of a property management fee, and legal fees; (3) $227,341 to Riverside; (4) $500,000 (more) to Meridian; and (5) $2,500 to the title closers. Therefore, excluding amounts disbursed back to Goldberg Weprin pursuant to the Contract of Sale, Riverside disbursed at least a total of $10,477,500 (the "Down Payment Proceeds").[3]

---

[1] *See* Contract of Sale, ¶3.2.1, page 5 (requiring $14,330,000 down payment).

[2] *See* Contract of Sale, ¶2.2 (page 2) (stating that a Commitment for Title Insurance was provided by Riverside), ¶26 (page 24) (stating that the disbursements set forth in the Direction Letter were to be made by the "title company.").

[3] The Debtor does not know whether the initial $1 million that was deducted from the Down Payment and paid to Meridian was disbursed by Riverside or was transferred directly from the purchaser, HS 45 John, to Meridian.

3

00922114.1

7. In the HS 45 John Bankruptcy Miller and Sprei admitted in a response to interrogatories ("Response to Interrogatories") that the $9,750,159 that Riverside "wire[d] at the direction of the seller" was

> wired to the law firm of Herrick Feinstein LLP to consummate another real estate transaction. Specifically, Messrs. Miller and Sprei owned the following four properties with a third partner named Bo Jin Zhu: (i) 203-205 North 8th Street, Brooklyn, New York; (ii) 32-34 5th Avenue, Brooklyn, New York; (iii) 97 Grand Avenue, Brooklyn, New York; and (iv) 29 Ryerson Street, Brooklyn, New York. Messrs. Miller and Sprei sought to buy out the interests of Mr. Jin Zhu in those properties. Messrs. Miller and Sprei used $9,750,000.00 of the downpayment to purchase Mr. Jin Zhu's interest [the "Zhu Transaction"].

Response to Interrogs. No. 5 (page 8). A copy of the Response to Interrogatories is attached hereto as Exhibit D.

8. Discovery in the HS 45 John Bankruptcy also revealed that Riverside was, simultaneously with the Contract of Sale, the title company and disbursing agent in the Zhu transaction. Attached hereto as Exhibit E is a schedule (the "Zhu Schedule") prepared by Riverside (with exhibits) in connection with the Zhu Transaction. The Direction Letter is an exhibit to the Zhu Schedule. The Zhu Schedule establishes that Riverside bundled the Down Payment Proceeds with other loan proceeds to fund Miller and Sprei's purchase in the Zhu Transaction. The top portion of the Zhu Schedule indicates that Riverside received a total of $30,249,341, including $9,750,000 (the amount of the Down Payment Proceeds that was "wire[d] at the direction of Seller", less $159.00), from Goldberg Weprin.[4]

9. Below the statement of the amounts received totaling $30,249,341, is a list of various entities that were disbursed these funds. Therefore, it appears that the entities who received a disbursement in the Zhu Transaction, were transferred a portion or all of the Down

---

[4] Simultaneously with the filing of this Application, the Debtor is also filing an application seeking discovery related to the transfer of the $9,750,000.

4

00922114.1

Payment Proceeds. However, this schedule is just a summary and does not include the actual identity of the parties that received the proceeds.

10. In addition, in the HS 45 John Bankruptcy, Herrick, Feinstein LLP ("Herrick")[5] produced a wire confirmation reflecting that on September 19, 2014, the day the Contract of Sale was executed and the day after the closing on the Zhu Transaction, Riverside wired $19,672,687.23 to Herrick for "Renatus/Miller." A copy of the wire confirmation is attached hereto as Exhibit F.

11. As demonstrated by the depositions taken in the HS 45 Bankruptcy of Shaul Greenwald, Riverside's CEO, and Sprei, Miller and Sprei bundled the $9,750,159 with other loan proceeds in order to acquire Zhu's interest pursuant to the Zhu Transaction. Applicable pages of the Greenwald deposition are annexed hereto as Exhibit G.

## THE APPLICATION

12. Bankruptcy Rule 2004 provides that "on motion of any party in interest, the Court may order the examination of any entity" with regard to the "acts, conduct, or property, or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate. . . ." It is well established that the scope of an examination under Bankruptcy Rule 2004 is "unfettered and broad." *In re Bennett Funding Grp., Inc.,* 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) (quoting *In re GHR Energy Corp.,* 33 B.R. 451, 453 (Bankr.D.Mass.1983); *In re Bakalis*, 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996). Indeed, a Bankruptcy Rule 2004 examination can legitimately be in the nature of a "fishing expedition." *Id.* (quoting *In re Wilcher,* 56 B.R. 428, 433 (Bankr.N.D.Ill.1985); *In re Duratech Indus.*, 241 B.R. 283, 289 (E.D.N.Y. 1999). "The purpose of such a broad discovery tool is to assist the

---

[5] The Zhu Transaction was a tri-party transaction between Zhu, Renatus Portfolio Company LLC, and Miller and Sprei. Herrick represented Renatus and was the escrow agent in the Zhu Transaction.

5

00922114.1

trustee in revealing the nature and extent of the estate, and to discover assets of the debtor which may have been intentionally or unintentionally concealed." *Id.* (quoting *In re Drexel Burnham Lambert Group, Inc.,* 123 B.R. 702, 708 (Bankr. S.D.N.Y.1991)).

13. As set forth above, it is indisputable that Riverside received the Down Payment Proceeds as disbursing agent under the Contract of Sale and disbursed those same proceeds to various entities in connection with the Zhu Transaction.

14. It is also undisputed that the Down Payment Proceeds were property of the Debtor at the time that Miller and Sprei caused the Debtor to transfer the proceeds to Riverside and further transferred to various entities.

15. In order to determine the transferees of the Down Payment Proceeds, the Debtor is required to seek the identity of the entities who received the portions of the Down Payment Proceeds from Riverside, and related information. This information, including actual letters of direction from the transferees as well as confirmation of wire transfers and cancelled checks (if any), is essential to the Debtor as it seeks to conduct a complete investigation of the Avoidance Claims, potentially its largest asset.

16. The Debtor submits that service of the attached Subpoena, by regular mail, on: a) Menachem O. Zelmanovitz, Esq., a member of Zelmanovitz & Associates who filed a notice of appearance[6] in the HS 45 John Bankruptcy on behalf of Riverside; and b) Shaul Greenwald, Riverside's CEO, constitutes sufficient service of the Subpoena under Fed. R. Civ. P. 45, as it is incorporated in Bankruptcy Rule 9016.

17. No prior request for the relief sought herein has been made of this or any other court.

---

[6] A copy of that notice of appearance is attached hereto as Exhibit H.

WHEREFORE, the Debtor respectfully requests that this Court enter an order, substantially in the form of the proposed order submitted with the Application, (i) granting the Application; and (ii) granting such other and further relief as this Court deems just and proper.

| | |
|---|---|
| Dated:  New York, New York<br>August 12, 2016 | **WILK AUSLANDER LLP**<br><br>By: /s/ Eric J. Snyder_____<br>   Eric J. Snyder, Esq.<br>   Eloy A. Peral, Esq.<br>1515 Broadway, 43rd Floor<br>New York, New York 10036<br>(212) 981-2300<br><br>*Proposed Counsel for 45 John Lofts, LLC* |

00922114.1