HEARING DATE: OCTOBER 13, 2016
HEARING TIME: 11:00 A.M.

**Wilk Auslander LLP**
**Counsel for Debtor**
**1515 Broadway**
**New York, New York 10036**
**(212) 981-2300**
**Eric J. Snyder, Esq.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:                                      :
                                            :       Chapter 11
**45 JOHN LOFTS, LLC,**                     :
                                            :
                        Debtor.             :       Case No. 16-12043 (SHL)
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY OF DEBTOR TO OBJECTION OF RIVERSIDE
TO DEBTOR'S BANKRUPTCY RULE 2004 APPLICATION**

  45 John Lofts, LLC, the debtor herein (the "Debtor") submits this reply (the "Reply") to the objection ("Objection") interposed by Riverside Abstract, LLC ("Riverside") to the Debtor's application (the "2004 Application") seeking documents from Riverside. In further support of the 2004 Application, the Debtor states as follows:

  1.  After turning over documents only partially responsive to the 2004 Application, Riverside now seeks to cut-off the Debtor's ability to obtain information necessary to trace the $30,249,341 (the "Zhu Payments") paid by Miller to purchase four properties (the "Zhu Transaction") immediately after he entered into the contract with HS 45 John. The Zhu payments include a substantial portion of the $14,330,000 Down Payment he stole from the Debtor. As we show below, the Debtor believes they protest too much.

  2.  Attached is the Debtor's request (Ex. A). It is limited to three areas and the Relevant Period is sixty days. This hardly constitutes a burdensome request. The fact that

1

Riverside provided less than 2,000 pages of discovery in the HS 45 John case (characterized as "thousands of pages" of documents in the Objection, ¶1)[1] and has already turned over ten times that amount related to the recent request, eviscerates the contention that the request is "cumulative" or "duplicative".

3.   Indeed, the focus of the requests in the HS 45 John case was limited to the Down Payment. The focus here is the recipients of Zhu Payments that Miller used to purchase the four Brooklyn properties that are the focus of the Zhu Transaction.

4.   Furthermore, the documents provided by Riverside raise more questions than provide answers. The Direction Schedule/Zhu Schedule (the "Schedule") is a document prepared by Riverside. (Greenwald Tr. 94.) A copy of the Schedule is annexed hereto as Ex. C.[2] It purports to reflect the origins of the funds and the ultimate transferees of the Zhu Payments that were disbursed as part of the Zhu Transaction. As the Court may recall, approximately $10 million of the Down Payment was included in these funds[3].

5.   There are three significant discrepancies[4] between the Schedule and the documents produced by Riverside. *First*, there is no evidence that 3839 Holdings, *an entity controlled by Riverside's principals*[5], contributed any funds to the Zhu Transaction, much less

---

[1] Riverside's penchant for exaggeration is unfortunately not limited to this misstatement. It states twice in the Objection that Riverside's principal was deposed for "a full day". In fact, at counsel's insistence, his deposition was only three hours.  A copy of the deposition of Shaul Greenwald, president of Riverside, is annexed as Ex. B.

[2] Incredibly, there was no closing statement produced by Riverside or any of the parties during the HS 45 John proceeding regarding the Zhu Transaction.

[3] $2,850,000 of the Down Payment was transferred back to the HS 45 John and its principal, $227,000 was transferred to Riverside on account of its title fees and $1,000,000 was paid to a mortgage broker by HS 45 John directly from the Down Payment.

[4] In addition, the funds that allegedly went to "Mega International", "Babad" and "Blaivas" according to the Schedule, actually were transferred to different entities.

[5] 3839 Holdings' two principals are Shaul Greenwald and Yoel Zagelbaum, another principal of Riverside. (Greenwald Tr. 96:13-25, 97: 1-3.)

2

00931201.1

the $618,088.02 reflected on the Schedule (the "3839 Funds"). Because of this, limiting discovery prevents the Debtor from ascertaining whether these funds were actually injected by 3839 Holdings.

6.  *Second*, there are emails sent at the direction of Greenwald to counsel for Miller the day of the closing of the Zhu Transaction reflecting that Riverside was to receive $2,332,000 from the Zhu Funds and conveying 3839 Holdings' wire instructions. A copy of this email is annexed as Ex. D.

7.   However, counsel for Riverside recently represented that: a) 3839 Holdings did not receive the $2,332,000; and b) "3839 Holdings put approximately $618,000 into the deal, and received no money from it, as reflected in the Distribution Schedule." Copies of the relevant emails are attached as Ex. E.

8.   Old Republic National Title Insurance Company ("Old Republic"), the underlying title company with respect to the Down Payment, received a title claim form HS 45 John during January, 2015. At that time, Old Republic requested that Riverside, by Greenwald, disclose the transferees of the Down Payment. After two months of repeated requests, Greenwald forwarded an email describing where the Down Payment went reflecting no funds were received by 3839 Holdings. Copies of these emails are annexed hereto as Ex. F.[6]

9.   The representations by both Riverside's counsel and Greenwald that 3839 Holdings was not paid from the Down Payment are directly contradicted by the evidence. Riverside prepared a spreadsheet reflecting that 3839 Holdings in fact received $618,088.80 from the Down Payment supported by wires confirming the receipt by 3839 Holdings of this amount on November 24, 2014. Copies of this spreadsheet and supporting wire information

---

[6] Despite Riverside's complaints about the duplicative nature of the requests, these documents were not previously provided.

00931201.1

reflecting this payment, as well as other alleged recipients of the Down Payment, are annexed as Ex. G.

10.    Riverside is not a disinterested third-party. Its principals are multi-million dollar investors with Miller and Sprei in at least two transactions, including this one (allegedly). (Greenwald Tr. 130-33.)  Because of this, the Court should not just take Riverside's word that it has produced all relevant information. In light of the aforementioned inconsistencies, more information is required to be produced, not less.

11.    *Third*, the Schedule reflects that "3052 Brighton Street" received $1.2 million from the Zhu Funds. However, the evidence persuasively reflects that this disbursement did not come from either the Zhu Funds or the Down Payment. According to Riverside's own records: a) 3052 Brighton Street received $1.2 Million on September 17, 2014, *two days prior to the funding of the Zhu Transaction*; and b) according to Riverside, the loan was "only for a day".[7] Copies of the confirming wires and admissions regarding the duration of the loan are annexed hereto as Ex. H. Therefore, it not possible that the $1.2 million received by 3052 Brighton First LLC originated from the Zhu Funds, and further brings into question the veracity of the Schedule.

12.    Finally, although the purchase price for the four subject properties was $31 Million, according to the Schedule, only $30.249 Million was disbursed. What happened to the other $751,000?

---

[7] 3052 Brighton First is an entity controlled by Chaim Miller. The party instructing Greenwald by email, oldenequitiesgroup@gmail.com, to transfer the $1.2 Million is Sam Sprei.

4

13. Because of the discrepancies related to 3839 Holdings and 3052 Brighton First, and the absence of a contemporaneously prepared closing statement, Riverside should be required to turn over all documents responsive to the request.[8]

## CONCLUSION

14. For all of the forgoing reasons, and for the reasons stated in the 2004 Application, the Debtor requests that the Court enter an order (a form of which is attached to the 2004 Application) granting the 2004 Application and for such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        October 7, 2016

                                        WILK AUSLANDER LLP
                                        *Attorneys for the Debtor*


                                        By: /s/ Eric J. Snyder_____
                                            Eric J. Snyder, Esq.
                                        1515 Broadway, 43rd Floor
                                        New York, NY 10036
                                        (212) 981-2300

---

[8] Riverside claims in the Objection (¶¶ 1,7) that it has been released from any liability by the Debtor. It is the Debtor's position that the limited release executed by the Debtor does not release 3839 Holdings for liability regarding the 3839 Funds. However, even if the release covers these funds, to the extent the Debtor relied on the Schedule in giving the release, and the Schedule was knowingly false, that would be grounds to invalidate the release. *See Centro Empresarial Cempresa S.A. v America Movil, S.A.B. de C.V.*, 17 N.Y.3d 269 (2011). This is an additional reason why transparency by Riverside and its affiliates is important.

00931201.1