**WILK AUSLANDER LLP**
1515 Broadway, 43rd Floor
New York, New York 10036
(212) 981-2300
Eric J. Snyder, Esq.
Eloy A. Peral, Esq.

*Counsel for Plaintiff/Debtor*

**SILVERMAN SHIN & BYRNE PLLC**
Wall Street Plaza
88 Pine Street, 22nd Floor
New York, New York 10005
(212) 779-8600
Peter R. Silverman, Esq.
Donald F. Schneider, Esq.

*Special Counsel for Plaintiff*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- X

| | | |
|---|---|---|
| In re: | : | |
| | : | Case No. 16-12043 (SHL) |
| 45 JOHN LOFTS, LLC | : | |
| | : | Chapter 11 |
| Debtor, | : | |

----------------------------------------------------------------- X

| | | |
|---|---|---|
| 45 JOHN LOFTS, LLC, | : | |
| | : | |
| Plaintiff, | : | Adv. Pro. No. 17-[_____] (SHL) |
| | : | |
| -against- | : | |
| | : | |
| MERIDIAN CAPITAL GROUP LLC, | : | |
| CROWN MANSION LLC, BO JIN ZHU, | : | |
| MEGA INTERNATIONAL COMMERCIAL | : | |
| BANK, CONGREGATION KAHAL MINCHAS | : | |
| CHINUCH, CHAIM SCHIYA BABAD, | : | |
| RELIABLE ABSTRACT CO., LLC, | : | |
| ABRAHAM MANDEL, TOBY MANDEL, | : | |
| SILVER GOLD GROUP LLC, | : | |
| JOSEPH BRUNNER,    JOSEPH SEGEL, | : | |
| DAVID JANKLOWICZ, MORRIS LOWY, | : | |
| MITCHELL KIRSCHNER, JERRY LOWY, | : | |
| ISAAC GREENFELD, AND | : | |
| RENATUS PORTFOLIO COMPANY, LLC, | : | |
| | : | |
| Defendants. | : | |

----------------------------------------------------------------- X

- 1 -

## COMPLAINT

45 John Lofts, LLC (the "Debtor" or "Plaintiff"), by its attorneys, Wilk Auslander LLP and Silverman Shin & Byrne PLLC, for its Complaint herein, alleges as follows:

1.       The Debtor brings this action to recover the principal sum of $11,480,000 (the "Net Down Payment") that was unlawfully diverted to or for the benefit of the above defendants (collectively, the "Defendants") by Chaim Miller ("Miller"), a former member of the Debtor. The Defendants should collectively be required to pay to the Debtor this sum as the Debtor received nothing of value in exchange for the transfer of the Net Down Payment.

### JURISDICTION AND VENUE

2.       On July 20, 2016, the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the U.S. Code (the "Bankruptcy Code") with this Court.

3.       This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

4.       This adversary proceeding is commenced pursuant to Rule 7001, *et seq.* of the Federal Rules of Bankruptcy Procedure and §§ 544, 548, and 550(a) of the Bankruptcy Code.

5.       Venue in this Court is proper pursuant to 28 U.S.C. § 1409 because this proceeding arises under, and is in connection with, a case under the Bankruptcy Code.

6.       This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)(H), and (O).

7.       Should the Bankruptcy Court determine that this is a non-core proceeding, the Debtor consents to the issuance by the Bankruptcy Court of recommendations containing proposed findings of fact and conclusions of law to the District Court.

467613v2 (SSB)
00990191.2

## THE PARTIES

8.      Upon information and belief, defendant Meridian Capital Group LLC is a limited liability company organized under the laws of the State of New York with its principal place of business located in New York, New York.

9.      Upon information and belief, defendant Crown Mansion LLC ("Crown Mansion") is a limited liability company organized under the laws of the State of New York with its principal place of business located in New York, New York.

10.     Upon information and belief, defendant Bo Jin Zhu ("Zhu") is a resident of the State of New York.

11.     Upon information and belief, defendant Zhu controls Crown Mansion and was in that position during the time of the events described in the Complaint.

12.     Upon information and belief, defendant Mega International Commercial Bank ("Mega") is a financial institution chartered in the State of California.

13.     Upon information and belief, defendant Congregation Kahal Minchas Chinuch (the "Congregation") is a religious entity organized under Section 501(c)(3) of the Internal Revenue Code and its principal place of business is located in Brooklyn, New York.

14.     Upon information and belief, defendant Chaim Schiya Babad ("Babad") is an individual who resides in Brooklyn, New York.

15.     Upon information and belief, Babad controls and controlled the Congregation at all relevant times herein.

16.     Upon information and belief, defendant Reliable Abstract Co., LLC ("Reliable") is a limited liability company organized under the laws of the State of New York with a principal place of business located in Brooklyn, New York.

- 3 -

17.      Upon information and belief, defendant Abraham Mendel is an individual who resides in Brooklyn, New York.

18.      Upon information and belief, defendant Toby Mandel is an individual who resides in Brooklyn, New York.

19.      Upon information and belief, defendant Silver Gold Group LLC ("SGG") is a limited liability company organized under the laws of the State of New York with a principal place of business located in Brooklyn, New York.

20.      Upon information and belief, defendant Joseph Brunner ("Brunner") and defendant Abraham Mandel control and controlled SGG at all times relevant herein.

21.      Defendant Renatus Portfolio Company, LLC ("Renatus") is a limited liability company organized under the laws of the State of New York with a principal place of business in New York, New York.

22.      Upon information and belief, at all times relevant herein, Brunner held an interest in Renatus.

23.      Upon information and belief, defendant Brunner is an individual who resides in Brooklyn, New York.

24.      Upon information and belief, defendant Joseph Segel is an individual who resides in Brooklyn, New York.

25.      Upon information and belief, defendant David Janklowicz is an individual who resides in Brooklyn, New York.

26.      Upon information and belief, defendant Morris Lowy is an individual who resides in Brooklyn, New York.

- 4 -

27.     Upon information and belief, defendant Mitchell Kirschner is an individual who resides in Brooklyn, New York.

28.     Upon information and belief, defendant Jerry Lowy is an individual who resides in Brooklyn, New York.

29.     Upon information and belief, defendant Issac Greenfeld is an individual who resides in Brooklyn, New York.

FACTS

### a.   The Zhu Buy-Out and the Agreement to Sell the Debtor's Sole Asset

30.     The Debtor's sole asset was a vacant eighty-four unit condominium located at 45-49 John Street, New York, New York, designated on the Official Tax Map of The City of New York, New York County, respectively, as Block 78, Lots 1701-1787 f/k/a Block 78, Lot 28 (the "Property").

31.     The Property was purchased by the Debtor from MRC Re Holdings LLC during March 2014 for the sum of $60,000,000 (the "MRC Contract").

32.     The Debtor financed the purchase of the Property with three mortgage loans in the aggregate principal amount of $49.5 million (the "Madison Mortgage Loans") from affiliates of Madison Realty Capital ("Madison"), a lender with which Miller had financed several other real estate transactions.

33.     The Madison Mortgage Loans remained outstanding at all times relevant herein.

34.     During 2014, Miller and his business partner Samuel Sprei ("Sprei") were under substantial pressure to come up with funds in order to consummate a $31 million contract to buy-out the membership interest of Miller's partner, defendant Zhu, in four limited liability

- 5 -

companies (other than the Debtor), each owning a separate commercial property, and to avoid the loss of Miller and Sprei's $8.5 million contract down payment.

35.     Specifically on May 12, 2014, Miller and Sprei entered into a contract (the "Zhu Buy-Out Contract")  with Zhu's assignee, defendant Renatus, to buy-out Zhu's interests in limited liability companies that owned the following real properties: 97 Grand Avenue ("Grand Avenue"), 203-205 North 8th Street ("North 8th St."), 32-34 Fifth Ave. ("Fifth Avenue"), and 29 Ryerson Street ("Ryerson," and along with Grand Avenue, North 8th St. and Fifth Avenue, the "Buy-Out Properties").

36.     Miller and Zhu were the sole members of the limited liability companies which owned the Buy-Out Properties, with the exception of the limited liability company which owned Ryerson, in which Chun Peter Dong ("Dong"), the Debtor's managing member, had previously acquired a 25% interest from Miller.

37.     Under the Zhu Buy-Out Contract, Miller and Sprei had paid an initial deposit of $7 million against a purchase price of $31 million, with payment of the balance to be made by a time of the essence closing scheduled for August 11, 2014.

38.     As the August closing date for the Zhu Buy-Out Contract neared, counsel for Miller and Sprei negotiated an extension of the time of the essence closing date with Renatus from August 11 to September 15, 2014 in consideration of an additional deposit of $1.5 million (the "Extension Payment").

39.     The entire amount of the Extension Payment was remitted by defendant Brunner by using funds from two entities ($750,000 each) he controls: defendant SGG and non-party Brooklyn Realty Holdings, LLC ("Brooklyn Realty").

467613v2 (SSB)
00990191.2

40.     By the end of August 2014, counsel for Miller and Sprei were unable to raise the remainder of the purchase price needed to consummate the Zhu Buy-Out Contract.

41.     Miller and Sprei then attempted to obtain the necessary funds by, among other things, contracting to sell the Property and refinancing three of the Zhu Buy-Out Properties and another property controlled by Miller.

42.     Facing a fast approaching deadline which required them to pay $22.5 million to Renatus in order to close the Zhu Buy-Out Contract and avoid the loss of their $8.5 million down payment, Miller and Sprei commenced negotiations with HS 45 John, LLC ("HS 45") on or about September 9, 2014, initially for an investment in the Debtor in the form of a joint venture agreement with Miller and Sprei, to the exclusion of the other members of the Debtor.

43.     By September 15, 2014, however, despite frantic negotiations between Miller on the one hand, and HS 45 on the other hand, the parties had failed to complete an agreement regarding an investment by HS 45 in the Debtor.

44.     On September 15, 2014, counsel for Miller and Sprei obtained a further three day adjournment from Renatus to September 18, to pay the $22.5 million balance of the purchase price under the Zhu Buy-Out Contract and avoid forfeiting their $8.5 million contract deposit.

45.     On September 18, 2014, counsel for Miller and Sprei obtained an oral extension to September 19, 2014 to conclude the negotiations for, and anticipated execution by, the Debtor of a contract to sell the Property, which would generate funds needed to close the Zhu Buy-Out.

46.     On September 18, 2014, Counsel for the Debtor emailed Andrew Albstein, lead counsel for HS 45, stating as follows: "I am trying to make sure Sam [Sprei] has all the funds that he needs tomorrow morning, as I was able to get the other Seller's attorney to agree to hold off until noon tomorrow before I failure [sic] to fund today becomes a default".

- 7 -

47.     The "other seller's attorney" referred to in the email was Herrick Feinstein, LLP ("Herrick"), the attorneys representing Renatus (Zhu's assignee) in the Zhu Buy-Out Contract, with whom counsel for the Debtor had negotiated an extension to September 18 and then a last minute extension to noon on September 19.

48.     Sprei and counsel for the Debtor then proceeded to hastily conclude the negotiation of an Agreement of Purchase and Sale ("PSA") of the Property between the Debtor, as seller, and HS 45, as purchaser.

49.     Miller and Sprei's interest in the transaction was to procure sufficient funds – funds which they stole from the Debtor – to enable them to close under the Zhu Buy-Out Contract prior to the time of the essence deadline.

50.     The PSA included language which allowed for the extraordinary release of the $14,330,000 down payment required under the PSA (the "PSA Down Payment") without escrow. Escrow of the PSA Down Payment was avoided because of Miller and Sprei's desperation and intent to cause the Debtor, without the consent or knowledge of its other members, to transfer the net amount of PSA Down Payment proceeds (defined as the Net Down Payment above) to fund Miller and Sprei's personal obligations that in no way benefitted the Debtor.

51.     On September 19, 2014 (the "Contract Date"), Miller executed the PSA with HS 45 on behalf of the Debtor.

52.     The $64.5 million purchase price provided in the PSA (which, for the reasons set forth below, was artificially inflated) was negotiated by Sprei and Miller as a fire sale due to their desperate need of funds to close the requirements of the Zhu Buy-Out Contract.

- 8 -

53.    The PSA also contained a built-in mechanism giving Miller an option to participate together with HS 45 as members of the Debtor (to the exclusion of Debtor's other members) in lieu of closing of title.

54.    The PSA included, <u>inter alia</u>, the following provisions:

(a)    a purchase price consisting of $17.5 million and an amount equal to the unpaid principal balance of outstanding mortgage indebtedness not to exceed $47 million, valuing the transaction at $64.5 million;

(b)    a down payment in the amount of $14,330,000 of which $13,300,000 was delivered to Riverside Abstract Company ("Riverside"), which served as a clearing agent for both the PSA transaction and the Zhu Buy-Out Contract transaction, and $1,000,000 was disbursed directly by HS 45 to Meridian Capital Group LLC ("Meridian") ostensibly for a brokerage commission.  Extraordinarily, no escrow was provided for the $13,300,000 and Riverside was directed to return $2,850,000 (the "HS 45 Fees") to HS 45 and its counsel.

(c)    the payment of a "management fee" to HS 45 guaranteed by Miller and Sprei, in the amount of $104,166.66 per month, payable monthly in advance upon signing of the PSA, with late payment interest at 16% per annum.  No explanation was given for the need of management services for the Property which consisted of a vacant building.

55.    Miller entered into the PSA without the knowledge or consent of either Dong, the Debtor's co-manager, or the Debtor's other investors who collectively hold a 41 percent membership interest in the Debtor (the "41% Investors").

56.    After Dong and the 41% Investors learned of the unauthorized PSA, Miller and Sprei, on behalf of the Debtor, provided the Debtor's other members with a fabricated letter in order to conceal their theft of the PSA Down Payment. The letter (the "Quick Title Letter") was

- 9 -

purportedly from Quick Title Search, LLC ("Quick Title"), signed by Abraham Teitelbaum, and addressed to Miller. It stated that Quick Title "is still holding on behalf of Harry Miller the proceeds from a 1031 exchange in the amount of $12,453,980." During the HS 45 John bankruptcy (discussed below), Sprei testified that the Quick Title Letter was simply a hoax; Quick Title never held any of the proceeds of the PSA Down Payment and never had any dealings with Miller or Sprei. He testified that the Quick Title Letter was created by a "friend" without the knowledge of any of Quick Title's employees or principals, including Mr. Teitelbaum. Sprei further testified that he provided Dong and the 41% Investors with the Quick Title Letter in order to "soothe" the "Asian Group" (*i.e.*, the Debtor's other members) who were, not surprisingly, alarmed at the unauthorized sale of the Property and the prospect that Miller and Sprei might "run off" with the PSA Down Payment.

57.     To provide additional funds for the Zhu Buy-Out, Miller and Sprei arranged for mezzanine financing from Madison on three of the Zhu Buy-Out Properties (Ryerson, Grand and North 8th) and a fourth property which Miller controlled (the "Collateral Properties Financing").

58.     The Collateral Properties Financing netted Miller and Sprei the sum of $16,073,911 in addition to the PSA Down Payment.

59.     In addition to providing vendee title insurance for the PSA, Riverside also provided title insurance to Madison for the Collateral Properties Financing.

### b. *Disbursement of the PSA Down Payment and Collateral Properties Financing*

60.     On the Contract Date (September 19, 2014), upon execution of the PSA, the sum of $13,300,000 (the PSA Down Payment minus the $1,000,000 that went directly to defendant Meridian) and the proceeds of the Madison Collateral Properties Financing ($16,073,911.98)

- 10 -

totaling approximately $29,403,911.98 (collectively, the "Total Buy-Out Proceeds") were wired

to a bank account maintained by Riverside, which acted as a clearing agent for both transactions.

61.     On the Contract Date, the sum of $1,000,000 was transferred, via wire, from

either Goldberg, Weprin, Finkel Goldstein, LLP ("GWFG"), counsel for HS 45 John, or HS 45

John, to Meridian.

62.     On the Contract Date, and the next business day, September 22, 2014, the Total

Buy-Out Proceeds were then transferred by Riverside as follows:

    a)  $19,672,687.23 to Herrick, in its capacity as counsel for Renatus under the

        Zhu Buy-Out Contract (the "Herrick Escrow");

    b)  $2,827,312.77 to Mega (the "Mega Transfer");

    c)  $2,850,000 back to GWFG, as the HS 45 Fees.

    d)  $2,000,000 to the Congregation (the "Congregation Transfer");

    e)  $500,000 to Meridian (with the $1,000,000 that was transferred directly to

        Meridian by HS 45, *see* ¶ 54(b), *supra*, as the "Meridian Transfer");

    f)  $500,000 to Reliable (the "Reliable Transfer");

    g)  $583,570.98 remained in escrow with Riverside;

    h)  $242,000 to Image Capital, LLC;

    i)  $227,341 to Riverside; and

    j)  $1,000 to the title closer.

63.     On the Contract Date, an officer of Renatus directed Herrick to distribute the

Herrick Escrow ($19,672,687.23) it received from Riverside to: a) Treff & Lowy, PLLC

("T&L"), a law firm, in the amount of $5,600,000 (the "T&L Transfer"); b) $1,000,000 to

Abraham Mandel (the "Mandel Transfer"); and c) $13,072,687.23 to SGG (the "SGG Transfer",

- 11 -

with the T&L Transfer and the Mandel Transfer, collectively, as the "Renatus/Herrick Transfer").

64.    On the Contract Date, Herrick wired the funds as set forth in the preceding paragraph.

65.    The T&L Transfer was a partial repayment by defendant Brunner, who had an interest in Renatus, of a $7 million loan made by T&L, on or about May 30, 2014, as a "nominee" of the T&F Transferees (defined below) to Anmuth Holdings, LLC (the "Anmuth Loan"). Anmuth Holdings, LLC is owned and controlled by defendants Brunner and Abraham Mandel. Defendants Brunner, Abraham Mandel, and his wife, Toby Mandel, personally guaranteed the Anmuth Loan.

66.    Upon information and belief, Brunner used the proceeds of the Anmuth Loan to acquire the real property located at 49 Dupont Street in Brooklyn, New York.

67.    On or about the Contract Date, T&L transferred $5,583,333.32 of the $5,600,000 as follows:

    a)    Defendant Joseph Segal, the sum of $300,000 (The "Segal Transfer");

    b)    Defendant David Janklowicz, the sum of $150,000 (the "Jankowicz Transfer");

    c)    Defendant Morris Lowy, the sum of $666,666.66 the ("M. Lowy Transfer");

    d)    Defendant Mitchell Kirschner, the sum of $666,666.66 (the "Kirschner Transfer");

    e)    Defendant Jerry Lowy the sum of $800,000 (the "J. Lowy Transfer"); and

    f)    Defendant Isaac Greenfeld, the sum of $3,000,000 (the "Greenfeld Transfer").

467613v2 (SSB)
00990191.2

68.     Upon information and belief, T&L retained $16,666.68 of the $5,600,000 it received from Herrick (collectively, with Messrs. Segal, Janklowicz, Kirschner, Greenfeld and the Lowys, as the "T&L Transferees").

69.     With the possible exception of $1,500,000 wired to Meridian as a purported brokerage fee, no portion of the sums or benefit received by the Defendants were used for the direct or indirect benefit of the Debtor.

### c.   *The Benefitted Parties*

70.     Numerous of the transfers made by Riverside from the Total Buy-Out Proceeds were intended to benefit certain defendants who may not have actually received any of the funds.

71.     Prior to the Contract Date, Crown Mansion borrowed the principal sum of $2,700,000 from Mega (the "Crown Mansion Loan").

72.     A "pay-off" letter from Mega dated the same date as the Contract Date, stated that the total amount due under the Crown Mansion Loan equaled $2,827,312.77, the exact amount of the Mega Transfer.

73.     During his deposition in the HS 45 bankruptcy (discussed below), when questioned about the statement in the Riverside Disbursement Schedule (defined below) that $2,827,312.77 was disbursed from Riverside to Mega, Sprei testified that "that part of the money of the proceeds that Mr. Zhu got  . . . we paid off Mega International for him. That was part of the disbursements from him."

74.     Accordingly, Crown Mansion's principal and party to the Zhu Buy-Out Contract, Zhu, directed that the Mega Transfer be made to pay off the Crown Mansion Loan for the intended benefit of both him in his individual capacity and Crown Mansion. In addition, Zhu benefited from the payoff of the Crown Mansion Loan, because upon the satisfaction of the loan,

- 13 -

Mega terminated a UCC-1 financing statement that was filed in favor of Mega and against Zhu in his personal capacity in order to secure Crown Mansion's obligations under the Crown Mansion Loan (the "Zhu UCC Termination").

75.    The Congregation was the recipient of the Congregation Transfer. However, the disbursement schedule prepared by Riverside for the Zhu Buy-Out Contract and PSA (the "Riverside Disbursement Schedule"), which was produced in discovery in the HS 45 bankruptcy (discussed below), indicates that Babad was the recipient of the Congregation Transfer and not the Congregation. When asked to address this discrepancy, counsel for the Debtor in the PSA transaction testified in the HS 45 bankruptcy and associated adversary proceedings that the Congregation Transfer was made to the Congregation rather than Babad, because "any time [Babad] has gotten wires, that's where the wire instructions have been sent."

76.    Although neither Babad nor the Congregation were parties to the Zhu Buy-Out Contract, Babad was present at the closing. Indeed, on the transcript of the closing on the Zhu Buy-Out Contract, Babad is listed as a "purchaser" along with Sprei and Milller. Babad's prominent attendance at the closing further evidences that the Congregation Transfer was intended to benefit Babad.

77.    Defendant Brunner benefited from the misappropriation of the Net Down Payment in various ways. First, SGG, which is controlled by Brunner, received the SGG Transfer. The SGG Transfer was, in part, made to repay the funds loaned by Brunner, through SGG and Brooklyn Realty, to Miller and Sprei for the Extension Payment in connection with the Zhu Buy-Out Contract.

78.    Second, Brunner held an interest in Renatus at the time the Zhu Buy-Out Contract was consummated. Since two of the three recipients of the Renatus/Herrick Transfer were

- 14 -

affiliated and/or controlled by Brunner – *i.e.*, Mandel who is a close business associate of Brunner and SGG which is controlled by Brunner – and the other recipient, T&L, as alleged nominee for the T&L Transferees, received the funds as a partial repayment of the Anmuth Loan, also which Brunner controls, Brunner must have been an intended beneficiary of the Renatus/Herrick Transfer.

79.     Although Brunner was not a direct party to the Zhu Buy-Out Contract he was present at the closing. Brunner's presence at the closing is additional evidence that these various transfers were intended to benefit Brunner.

80.     Lastly, Brunner, Mandel, and Toby Mandel (the "Anmuth Guarantors") personally guaranteed (the "Anmuth Guarantees") the repayment of the Anmuth Loan. As a result of the T&L Transfer, the outstanding amount owed by Anmuth Holdings, and thus the amount that the Anmuth Guarantors guaranteed, was reduced by the amount of the T&L Transfer, *i.e.*, by $5.6 million. Thus, although the T&L Transfer was not made directly to the Anmuth Guarantors, the transfer nonetheless benefitted them to the extent their personal repayment obligations were reduced by the $5.6 million repayment of the Anmuth Loan.

### d.     *The Ensuing HS 45 Bankruptcy Litigation*

81.     Riverside recorded a memorandum of the PSA with the New York City Register.

82.     Upon learning, as a result of Riverside's public filing that Miller had entered into a contract of sale for the Property without Dong's knowledge, Dong's representative demanded that Sprei and counsel for the Debtor provide Dong with a copy of the contract and the status of the PSA Down Payment.  Such demand was rejected.

83.     Thereafter, on February 18, 2015, Dong commenced an action, individually and derivatively on behalf of the Debtor, in the New York Supreme Court, New York County

- 15 -

seeking, *inter alia,* to enjoin the sale of the Property.  After a temporary restraining order was issued enjoining the sale, HS 45 filed a Chapter 11 petition with the U.S. Bankruptcy Court for the Southern District of New York and commenced an adversary proceeding in the case for specific performance of the PSA.

84.     Following extensive litigation involving multiple parties in the HS bankruptcy, the Court approved a global settlement agreement among the parties to the litigation and a Chapter 11 Plan of Reorganization by HS 45, which resulted in the eventual sale of the Property to a third-party purchaser for $73 million under distressed sale circumstances.

85.     After payment of administration expenses, most of the proceeds of the distressed sale were paid to satisfy the Madison Mortgage Loans ($53 million), which equaled $51,429,334 on the Contract Date, and to HS 45 for the PSA rights ($13.5 million).

86.     The remaining proceeds were paid to Dong and the 41% Investors in satisfaction of their claims against HS 45 and for payment of sale expenses in the bankruptcy.

## COUNT I

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) and 550(a)*
### (Against Meridian)

87.     The Debtor incorporates by reference the foregoing allegations.

88.     The PSA Down Payment from which the Meridian Transfer was made was property of the Debtor.

89.     The PSA Down Payment was made at a time when the Debtor:

    a.     Was insolvent or was rendered insolvent by such transfer;

    b.     Was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small capital; or

- 16 -

    c.     Intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

90.    The Debtor received less than reasonably equivalent value in exchange for the Meridian Transfer.  In fact it received no value.

91.    By reason of the foregoing, the Meridian Transfer constituted an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(B).

92.    Based on the foregoing, Plaintiff is entitled to an order and judgment against Meridian: (i) avoiding the Meridian Transfer under 11 U.S.C. § 548(a)(1)(B); and (ii) entitling plaintiff to recover the amount of the Meridian Transfer, or the value of the Meridian Transfer, from Meridian under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT II

### *Fraudulent Transfer Under NY Debtor & Creditor Law §§ 270-275 and 11 U.S.C. §§ 544(b) and 550(a)* (<u>Against Meridian</u>)

93.    The Debtor incorporates by reference the foregoing allegations.

94.    The PSA Down Payment from which the Meridian Transfer was made was property of the Debtor.

95.    The Meridian Transfer was made at a time when the Debtor:

    a.     Was insolvent or was rendered insolvent by such transfer;

    b.     Was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small capital; or

    c.     Intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

- 17 -

96.     The Debtor received less than fair consideration in exchange for the Meridian Transfer.  In fact it received no consideration.

97.     Section 544(b) of the Bankruptcy Code allows the Debtor to avoid any transfer of property that is voidable under applicable law by a creditor holding an allowed unsecured claim.

98.     By reason of the foregoing, the Meridian Transfer constituted an avoidable fraudulent transfer under NY Debtor and Creditor Law §§ 270-275.

99.     Based on the foregoing, Plaintiff is entitled to an order and judgment against Meridian: (i) avoiding the Meridian Transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law §§ 270-275; and (ii) entitling Plaintiff to recover the amount of the Meridian Transfer, or the value of the Meridian Transfer, from Meridian under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT III

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(A) and 550(a)*
### (**Against Meridian**)

100.    The Debtor incorporates by reference the foregoing allegations.

101.    The PSA Down Payment from which the Meridian Transfer was made was property of the Debtor.

102.    The Meridian Transfer was made by the Debtor with the actual intent to hinder, delay, or defraud some or all of the Debtor's then existing and/or future creditors.

103.    By reason of the foregoing, the Meridian Transfer constituted an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(A).

104.    Based on the foregoing, Plaintiff is entitled to an order and judgment against Meridian: (i) avoiding the Meridian Transfer under 11 U.S.C. § 548(a)(1)(A); and (ii) entitling

- 18 -

Plaintiff to recover the amount of the Meridian Transfer, or the value of the Meridian Transfer, from Meridian under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT IV

### *Fraudulent Transfer Under NY Debtor & Creditor Law § 276*
### *and 11 U.S.C. §§ 544(b) and 550(a)*
### (**Against Meridian**)

105.    The Debtor incorporates by reference the foregoing allegations.

106.    The PSA Down Payment from which the Meridian Transfer was made was property of the Debtor.

107.    The Meridian Transfer was made by the Debtor with the actual intent to hinder, delay, or defraud some or all of the Debtor's then existing and/or future creditors.

108.    Section 544(b) of the Bankruptcy Code allows the Debtor to avoid any transfer of property that is voidable under applicable law by a creditor holding an allowed unsecured claim.

109.    By reason of the foregoing, the Meridian Transfer constituted an avoidable fraudulent transfer under NY Debtor and Creditor Law § 276.

110.    Based on the foregoing, Plaintiff is entitled to an order and judgment against Meridian: (i) avoiding the Meridian Transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law § 276; and (ii) entitling Plaintiff to recover the amount of the Meridian Transfer, or the value of the Meridian Transfer, from Meridian under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT V

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) and 550(a)*
### (**Against Mega**)

111.    The Debtor incorporates by reference the foregoing allegations.

- 19 -

112.    The PSA Down Payment from which the Mega Transfer was made was property of the Debtor.

113.    The Mega Transfer was made at a time when the Debtor:

    a.    Was insolvent or was rendered insolvent by such transfer;

    b.    Was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small capital; or

    c.    Intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

114.    The Debtor received less than reasonably equivalent value in exchange for the Mega Transfer.  In fact it received no value.

115.    By reason of the foregoing, the Mega Transfer constituted an avoidable fraudulent transfer under 11 U.S.C. § 548(a).

116.    Based on the foregoing, Plaintiff is entitled to an order and judgment against Mega: (i) avoiding the Mega Transfer under 11 U.S.C. § 548(a)(1)(B); and (ii) entitling plaintiff to recover the amount of the Mega Transfer, or the value of the Mega Transfer, from Mega under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT VI

### *Fraudulent Transfer Under NY Debtor & Creditor Law §§ 270-275 and 11 U.S.C. §§ 544(b) and 550(a)* (**Against Mega**)

117.    The Debtor incorporates by reference the foregoing allegations.

118.    The PSA Down Payment from which the Mega Transfer was made was property of the Debtor.

119.    The Mega Transfer was made at a time when the Debtor:

- 20 -

     a.     Was insolvent or was rendered insolvent by such transfer;

     b.     Was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small capital; or

     c.     Intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

120.    The Debtor received less than fair consideration in exchange for the Mega Transfer.  In fact it received no consideration.

121.    Section 544(b) of the Bankruptcy Code allows the Debtor to avoid any transfer of property that is voidable under applicable law by a creditor holding an allowed unsecured claim.

122.    By reason of the foregoing, the Mega Transfer constituted an avoidable fraudulent transfer under NY Debtor and Creditor Law §§ 270-275.

123.    Based on the foregoing, Plaintiff is entitled to an order and judgment against Mega: (i) avoiding the Mega Transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law §§ 270-275; and (ii) entitling Plaintiff to recover the amount of the Mega Transfer, or the value of the Mega Transfer, from Mega under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT VII

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(A) and 550(a)*
### (**Against Mega**)

124.    The Debtor incorporates by reference the foregoing allegations.

125.    The PSA Down Payment from which the Mega Transfer was made was property of the Debtor.

126.    The Mega Transfer was made by the Debtor with the actual intent to hinder, delay, or defraud some or all of the Debtor's then existing and/or future creditors.

- 21 -

127.     By reason of the foregoing, the Mega Transfer constituted an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(A).

128.     Based on the foregoing, Plaintiff is entitled to an order and judgment against Mega: (i) avoiding the Mega Transfer under 11 U.S.C. § 548(a)(1)(A); and (ii) entitling Plaintiff to recover the amount of the Mega Transfer, or the value of the Mega Transfer, from Mega under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT VIII

### *Fraudulent Transfer Under NY Debtor & Creditor Law § 276 and 11 U.S.C. §§ 544(b) and 550(a)* (<u>Against Mega</u>)

129.     The Debtor incorporates by reference the foregoing allegations.

130.     The PSA Down Payment from which the Mega Transfer was made was property of the Debtor.

131.     The Mega Transfer was made by the Debtor with the actual intent to hinder, delay, or defraud some or all of the Debtor's then existing and/or future creditors.

132.     Section 544(b) of the Bankruptcy Code allows the Debtor to avoid any transfer of property that is voidable under applicable law by a creditor holding an allowed unsecured claim.

133.     By reason of the foregoing, the Mega Transfer constituted an avoidable fraudulent transfer under NY Debtor and Creditor Law § 276.

134.     Based on the foregoing, Plaintiff is entitled to an order and judgment against Mega: (i) avoiding the Mega Transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law § 276; and (ii) entitling Plaintiff to recover the amount of the Mega Transfer, or the value of the Mega Transfer, from Mega under 11 U.S.C. § 550(a) as an initial transferee.

467613v2 (SSB)
00990191.2

## COUNT IX

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) and 550(a)*
### (Against Crown Mansion)

135.     The Debtor incorporates by reference the foregoing allegations.

136.     As set forth above, the Mega Transfer constituted an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(B).

137.     The Mega Transfer was made for the benefit of Crown Mansion, because the transfer paid the entire debt owed by Crown Mansion to Mega under the Crown Mansion Loan.

138.     As an entity for whose benefit the Mega Transfer was made, Plaintiff is entitled to an order and judgment against Crown Mansion entitling Plaintiff to recover the amount of the Mega Transfer, or the value of the Mega Transfer, from Crown Mansion under 11 U.S.C. § 550(a).

## COUNT X

### *Fraudulent Transfer Under NY Debtor & Creditor Law §§ 270-275*
### *and 11 U.S.C. §§ 544(b) and 550(a)*
### (Against Crown Mansion)

139.     The Debtor incorporates by reference the foregoing allegations.

140.     As set forth above, the Mega Transfer constitutes an avoidable fraudulent transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law §§ 270-275.

141.     The Mega Transfer was made for the benefit of Crown Mansion, because the transfer paid the entire debt owed by Crown Mansion to Mega under the Crown Mansion Loan.

142.     As an entity for whose benefit the Mega Transfer was made, Plaintiff is entitled to an order and judgment against Crown Mansion entitling Plaintiff to recover the amount of the Mega Transfer, or the value of the Mega Transfer, from Crown Mansion under 11 U.S.C. §§ 544(b), 550(a) and NY Debtor and Creditor Law §§ 270-275.

- 23 -

## COUNT XI

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(A) and 550(a)*
### (<u>Against Crown Mansion</u>)

143.     The Debtor incorporates by reference the foregoing allegations.

144.     As set forth above, the Mega Transfer constituted an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(A).

145.     The Mega Transfer was made for the benefit of Crown Mansion, because the transfer paid the entire debt owed by Crown Mansion to Mega under the Crown Mansion Loan.

146.     As an entity for whose benefit the Mega Transfer was made, Plaintiff is entitled to an order and judgment against Crown Mansion entitling Plaintiff to recover the amount of the Mega Transfer, or the value of the Mega Transfer, from Crown Mansion under 11 U.S.C. § 550(a).

## COUNT XII

### *Fraudulent Transfer Under NY Debtor & Creditor Law § 276*
### *and 11 U.S.C. §§ 544(b) and 550(a)*
### (<u>Against Crown Mansion</u>)

147.     The Debtor incorporates by reference the foregoing allegations.

148.     As set forth above, the Mega Transfer constitutes an avoidable fraudulent transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law § 276.

149.     The Mega Transfer was made for the benefit of Crown Mansion, because the transfer paid the entire debt owed by Crown Mansion to Mega under the Crown Mansion Loan.

150.     As an entity for whose benefit the Mega Transfer was made, Plaintiff is entitled to an order and judgment against Crown Mansion entitling Plaintiff to recover the amount of the Mega Transfer, or the value of the Mega Transfer, from Crown Mansion under 11 U.S.C. §§ 544(b), 550(a) and NY Debtor and Creditor Law § 276.

467613v2 (SSB)
00990191.2

## COUNT XIII

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) and 550(a)*
### (<u>Against Zhu</u>)

151.    The Debtor incorporates by reference the foregoing allegations.

152.    As set forth above, the Mega Transfer constitutes an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(B).

153.    The Mega Transfer was made for the benefit of Zhu, because, among other benefits received by Zhu, the transfer caused the Zhu UCC Termination.

154.    As an entity for whose benefit the Mega Transfer was made, Plaintiff is entitled to an order and judgment against Zhu entitling Plaintiff to recover the amount of the Mega Transfer, or the value of the Mega Transfer, from Zhu under 11 U.S.C. § 550(a).

## COUNT XIV

### *Fraudulent Transfer Under NY Debtor & Creditor Law §§ 270-275*
### *and 11 U.S.C. §§ 544(b) and 550(a)*
### (<u>Against Zhu</u>)

155.    The Debtor incorporates by reference the foregoing allegations.

156.    As set forth above, the Mega Transfer constitutes an avoidable transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law §§ 270-275.

157.    The Mega Transfer was made for the benefit of Zhu, because, among other benefits received by Zhu, the transfer caused the Zhu UCC Termination.

158.    Because the Mega Transfer was made for the benefit of Zhu and not the Debtor, the Debtor did not receive fair consideration for such transfer.

159.    As an entity for whose benefit the Mega Transfer was made, Plaintiff is entitled to an order and judgment against Zhu entitling Plaintiff to recover the amount of the Mega

Transfer, or the value of the Mega Transfer, from Zhu under 11 U.S.C. §§ 544(b), 550(a) and NY Debtor and Creditor Law §§ 270-275.

## COUNT XV

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(A) and 550(a)*
### (Against Zhu)

160.   The Debtor incorporates by reference the foregoing allegations.

161.   As set forth above, the Mega Transfer constitutes an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(A).

162.   The Mega Transfer was made for the benefit of Zhu, because, among other benefits received by Zhu, the transfer caused the Zhu UCC Termination.

163.   As an entity for whose benefit the Mega Transfer was made, Plaintiff is entitled to an order and judgment against Zhu entitling Plaintiff to recover the amount of the Mega Transfer, or the value of the Mega Transfer, from Zhu under 11 U.S.C. § 550(a).

## COUNT XVI

### *Fraudulent Transfer Under NY Debtor & Creditor Law § 276*
### *and 11 U.S.C. §§ 544(b) and 550(a)*
### (Against Zhu)

164.   The Debtor incorporates by reference the foregoing allegations.

165.   As set forth above, the Mega Transfer constitutes an avoidable transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law § 276.

166.   The Mega Transfer was made for the benefit of Zhu, because, among other benefits received by Zhu, the transfer caused the Zhu UCC Termination.

167.   As an entity for whose benefit the Mega Transfer was made, Plaintiff is entitled to an order and judgment against Zhu entitling Plaintiff to recover the amount of the Mega

467613v2 (SSB)
00990191.2

Transfer, or the value of the Mega Transfer, from Zhu under 11 U.S.C. §§ 544(b), 550 and NY

Debtor and Creditor Law § 276.

## COUNT XVII

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) and 550(a)*
### (__Against The Congregation__)

168.    The Debtor incorporates by reference the foregoing allegations.

169.    The PSA Down Payment from which the Congregation Transfer was made was

property of the Debtor.

170.    The Congregation Transfer was made at a time when the Debtor:

      a.      Was insolvent or was rendered insolvent by such transfer;

      b.      Was engaged in a business or transaction, or was about to engage in a

              business or transaction, for which any property remaining with the Debtor

              was an unreasonably small capital; or

      c.      Intended to incur, or believed that it would incur, debts that would be

              beyond its ability to pay as such debts matured.

171.    The Debtor received less than reasonably equivalent value in exchange for the

Congregation Transfer.  In fact it received no value.

172.    By reason of the foregoing, the Congregation Transfer constituted an avoidable

fraudulent transfer under 11 U.S.C. § 548(a)(1)((B).

173.    Based on the foregoing, Plaintiff is entitled to an order and judgment against the

Congregation: (i) avoiding the Congregation Transfer under 11 U.S.C. § 548(a)(1)(B); and (ii)

entitling plaintiff to recover the amount of the Congregation Transfer, or the value of the

Congregation Transfer, from the Congregation under 11 U.S.C. § 550(a) as an initial transferee.

467613v2 (SSB)
00990191.2

<u>COUNT XVIII</u>

*Fraudulent Transfer Under NY Debtor & Creditor Law §§ 270-275*
*and 11 U.S.C. §§ 544(b) and 550(a)*
(<u>Against The Congregation</u>)

174.    The Debtor incorporates by reference the foregoing allegations.

175.    The PSA Down Payment from which the Congregation Transfer was made was property of the Debtor.

176.    The Congregation Transfer was made at a time when the Debtor:

a.    Was insolvent or was rendered insolvent by such transfer;

b.    Was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small capital; or

c.    Intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

177.    The Debtor received less than fair consideration in exchange for the Congregation Transfer.  In fact it received no consideration.

178.    Section 544(b) of the Bankruptcy Code allows the Debtor to avoid any transfer of property that is voidable under applicable law by a creditor holding an allowed unsecured claim.

179.    By reason of the foregoing, the Congregation Transfer constituted an avoidable fraudulent transfer under NY Debtor and Creditor Law §§ 270-275.

180.    Based on the foregoing, Plaintiff is entitled to an order and judgment against the Congregation: (i) avoiding the Congregation Transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law §§ 270-275; and (ii) entitling Plaintiff to recover the amount of the Congregation Transfer, or the value of the Congregation Transfer from the Congregation, under 11 U.S.C. § 550(a) as an initial transferee.

467613v2 (SSB)
00990191.2

## COUNT XIX

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(A) and 550(a)*
### (<u>Against the Congregation</u>)

181.    The Debtor incorporates by reference the foregoing allegations.

182.    The PSA Down Payment from which the Congregation Transfer was made was property of the Debtor.

183.    The Congregation Transfer was made by the Debtor with the actual intent to hinder, delay, or defraud some or all of the Debtor's then existing and/or future creditors.

184.    By reason of the foregoing, the Congregation Transfer constituted an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(A).

185.    Based on the foregoing, Plaintiff is entitled to an order and judgment against Congregation: (i) avoiding the Congregation Transfer under 11 U.S.C. § 548(a)(1)(A); and (ii) entitling Plaintiff to recover the amount of the Congregation Transfer, or the value of the Congregation Transfer, from the Congregation under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT XX

### *Fraudulent Transfer Under NY Debtor & Creditor Law § 276*
### *and 11 U.S.C. §§ 544(b) and 550(a)*
### (<u>Against the Congregation</u>)

186.    The Debtor incorporates by reference the foregoing allegations.

187.    The PSA Down Payment from which the Congregation Transfer was made was property of the Debtor.

188.    The Congregation Transfer was made by the Debtor with the actual intent to hinder, delay, or defraud some or all of the Debtor's then existing and/or future creditors.

189.    Section 544(b) of the Bankruptcy Code allows the Debtor to avoid any transfer of property that is voidable under applicable law by a creditor holding an allowed unsecured claim.

- 29 -

190.    By reason of the foregoing, the Congregation Transfer constituted an avoidable fraudulent transfer under NY Debtor and Creditor Law § 276.

191.    Based on the foregoing, Plaintiff is entitled to an order and judgment against the Congregation: (i) avoiding the Congregation Transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law § 276; and (ii) entitling Plaintiff to recover the amount of the Congregation Transfer, or the value of the Congregation Transfer, from the Congregation under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT XXI

***Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) and 550(a)***
***(Against Babad)***

192.    The Debtor incorporates by reference the foregoing allegations.

193.    As set forth above, the Mega Transfer constitutes an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(B).

194.    The Congregation Transfer was made for the benefit of Babad.

195.    As an entity for whose benefit the Congregation Transfer was made, Plaintiff is entitled to an order and judgment against Babad entitling Plaintiff to recover the amount of the Congregation Transfer, or the value of the Congregation Transfer, from Babad under 11 U.S.C. § 550(a).

## COUNT XXII

***Fraudulent Transfer Under NY Debtor & Creditor Law §§ 270-275***
***and 11 U.S.C. §§ 544(b) and 550(a)***
***(Against Babad)***

196.    The Debtor incorporates by reference the foregoing allegations.

197.    As set forth above, the Congregation Transfer constitutes an avoidable transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law §§ 270-275.

- 30 -

198.    The Congregation Transfer was made for the benefit of Babad.

199.    Because the Congregation Transfer was made for the benefit of Babad and not the

Debtor, the Debtor did not receive fair consideration for such transfer.

200.    As an entity for whose benefit the Congregation Transfer was made, Plaintiff is

entitled to an order and judgment against Babad entitling Plaintiff to recover the amount of the

Congregation Transfer, or the value of the Congregation Transfer, from Babad under 11 U.S.C.

§§ 544(b), 550(a) and NY Debtor Creditor Law §§ 270-275.

## COUNT XXIII

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(A) and 550(a)*
### (**Against Babad**)

201.    The Debtor incorporates by reference the foregoing allegations.

202.    As set forth above, the Mega Transfer constitutes an avoidable fraudulent transfer

under 11 U.S.C. § 548(a)(1)(A).

203.    The Congregation Transfer was made for the benefit of Babad.

204.    As an entity for whose benefit the Congregation Transfer was made, Plaintiff is

entitled to an order and judgment against Babad entitling Plaintiff to recover the amount of the

Congregation Transfer, or the value of the Congregation Transfer, from Babad under 11 U.S.C. §

550(a).

## COUNT XXIV

### *Fraudulent Transfer Under NY Debtor & Creditor Law § 276*
### *and 11 U.S.C. §§ 544(b) and 550(a)*
### (**Against Babad**)

205.    The Debtor incorporates by reference the foregoing allegations.

206.    As set forth above, the Congregation Transfer constitutes an avoidable transfer

under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law § 276.

- 31 -

207.   The Congregation Transfer was made for the benefit of Babad.

208.   As an entity for whose benefit the Congregation Transfer was made, Plaintiff is entitled to an order and judgment against Babad entitling Plaintiff to recover the amount of the Congregation Transfer, or the value of the Congregation Transfer, from Babad under 11 U.S.C. §§ 544(b), 550(a) and NY Debtor Creditor Law § 276.

## COUNT XXV

### *Fraudulent Transfer under 11 U.S.C. §§ 548(a)(1)(B) and 550(a)*
### (Against Reliable)

209.   The Debtor incorporates by reference the foregoing allegations.

210.   The PSA Down Payment from which the Reliable Transfer was made was property of the Debtor.

211.   The Reliable Transfer was made at a time when the Debtor:

    a.   Was insolvent or was rendered insolvent by such transfer;

    b.   Was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small capital; or

    c.   Intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

212.   The Debtor received less than reasonably equivalent value in exchange for the Reliable Transfer.  In fact it received no value.

213.   By reason of the foregoing, the Reliable Transfer constituted an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(B).

214.   Based on the foregoing, Plaintiff is entitled to an order and judgment against Reliable: (i) avoiding the Reliable Transfer under 11 U.S.C. § 548(a)(1)(B); and (ii) entitling

- 32 -

plaintiff to recover the amount of the Reliable Transfer, or the value of the Reliable Transfer, from Reliable under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT XXVI

### *Fraudulent Transfer Under NY Debtor & Creditor Law §§ 270-275 and 11 U.S.C. §§ 544(b) and 550(a)* (Against Reliable)

215.    The Debtor incorporates by reference the foregoing allegations.

216.    The PSA Down Payment from which the Reliable Transfer was made was property of the Debtor.

217.    The Congregation Transfer was made at a time when the Debtor:

218.     Was insolvent or was rendered insolvent by such transfer;

219.    Was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small capital; or

220.    Intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

221.    The Debtor received less than fair consideration in exchange for the Reliable Transfer.  In fact it received no consideration.

222.    Section 544(b) of the Bankruptcy Code allows the Debtor to avoid any transfer of property that is voidable under applicable law by a creditor holding an allowed unsecured claim.

223.    By reason of the foregoing, the Reliable Transfer constituted an avoidable fraudulent transfer under NY Debtor and Creditor Law §§ 270-275.

224.    Based on the foregoing, Plaintiff is entitled to an order and judgment against Reliable: (i) avoiding the Reliable Transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law §§ 270-275; and (ii) entitling Plaintiff to recover the amount of the Reliable

- 33 -

Transfer, or the value of the Reliable Transfer, from Reliable under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT XXVII

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(A) and 550(a)*
### (<u>Against Reliable</u>)

225.    The Debtor incorporates by reference the foregoing allegations.

226.    The PSA Down Payment from which the Reliable Transfer was made was property of the Debtor.

227.    The Reliable Transfer was made by the Debtor with the actual intent to hinder, delay, or defraud some or all of the Debtor's then existing and/or future creditors.

228.    By reason of the foregoing, the Reliable Transfer constituted an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(A).

229.    Based on the foregoing, Plaintiff is entitled to an order and judgment against Reliable: (i) avoiding the Reliable Transfer under 11 U.S.C. § 548(a)(1)(A); and (ii) entitling Plaintiff to recover the amount of the Reliable Transfer, or the value of the Reliable Transfer, from Reliable under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT XXVIII

### *Fraudulent Transfer Under NY Debtor & Creditor Law § 276*
### *and 11 U.S.C. §§ 544(b) and 550(a)*
### (<u>Against Reliable</u>)

230.    The Debtor incorporates by reference the foregoing allegations.

231.    The PSA Down Payment from which the Reliable Transfer was made was property of the Debtor.

232.    The Reliable Transfer was made by the Debtor with the actual intent to hinder, delay, or defraud some or all of the Debtor's then existing and/or future creditors.

- 34 -

233.     Section 544(b) of the Bankruptcy Code allows the Debtor to avoid any transfer of property that is voidable under applicable law by a creditor holding an allowed unsecured claim.

234.     By reason of the foregoing, the Reliable Transfer constituted an avoidable fraudulent transfer under NY Debtor and Creditor Law § 276.

235.     Based on the foregoing, Plaintiff is entitled to an order and judgment against Meridian: (i) avoiding the Reliable Transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law § 276; and (ii) entitling Plaintiff to recover the amount of the Reliable Transfer, or the value of the Reliable Transfer, from Reliable under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT XXIX

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) and 550(a)*
### (<u>Against Abraham Mandel</u>)

236.     The Debtor incorporates by reference the foregoing allegations.

237.     The PSA Down Payment from which the Mandel Transfer was made was property of the Debtor.

238.     The Mandel Transfer was made at a time when the Debtor:

    a.     Was insolvent or was rendered insolvent by such transfer;

    b.     Was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small capital; or

    c.     Intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

239.     The Debtor received less than reasonably equivalent value in exchange for the Mendel Transfer.  In fact it received no value.

- 35 -

240.     By reason of the foregoing, the Mandel Transfer constituted an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(B).

241.     Based on the foregoing, Plaintiff is entitled to an order and judgment against Abraham Mandel: (i) avoiding the Mandel Transfer under 11 U.S.C. § 548(a)(1)(B); and (ii) entitling Plaintiff to recover the amount of the Mandel Transfer, or the value of the Mandel Transfer, from Abraham Mendel under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT XXX

### *Fraudulent Transfer Under NY Debtor & Creditor Law §§ 270-275 and 11 U.S.C. §§ 544(b) and 550(a)*
### (*Against Abraham Mandel*)

242.     The Debtor incorporates by reference the foregoing allegations.

243.     The PSA Down Payment from which the Mandel Transfer was made was property of the Debtor.

244.     The Mandel Transfer was made at a time when the Debtor:

   a.     Was insolvent or was rendered insolvent by such transfer;

   b.     Was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small capital; or

   c.     Intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

245.     The Debtor received less than fair consideration in exchange for the Mandel Transfer.  In fact it received no consideration.

246.     Section 544(b) of the Bankruptcy Code allows the Debtor to avoid any transfer of property that is voidable under applicable law by a creditor holding an allowed unsecured claim.

- 36 -

247.    By reason of the foregoing, the Mandel Transfer constituted an avoidable fraudulent transfer under NY Debtor and Creditor Law §§ 270-275.

248.    Based on the foregoing, Plaintiff is entitled to an order and judgment against Abraham Mandel: (i) avoiding the Mandel Transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law §§ 270-275; and (ii) entitling Plaintiff to recover the amount of the Mandel Transfer, or the value of Mandel Transfer, from Abraham Mandel under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT XXXI

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(A) and 550(a)*
### (<u>Against Abraham Mandel</u>)

249.    The Debtor incorporates by reference the foregoing allegations.

250.    The PSA Down Payment from which the Mandel Transfer was made was property of the Debtor.

251.    The Mandel Transfer was made by the Debtor with the actual intent to hinder, delay, or defraud some or all of the Debtor's then existing and/or future creditors.

252.    By reason of the foregoing, the Mandel Transfer constituted an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(A).

253.    Based on the foregoing, Plaintiff is entitled to an order and judgment against Abraham Mandel: (i) avoiding the Mandel Transfer under 11 U.S.C. § 548(a)(1)(A); and (ii) entitling Plaintiff to recover the amount of the Mandel Transfer, or the value of the Mandel Transfer, from Abraham Mandel under 11 U.S.C. § 550(a) as an initial transferee.

467613v2 (SSB)
00990191.2

## COUNT XXXII

### *Fraudulent Transfer Under NY Debtor & Creditor Law § 276 and 11 U.S.C. §§ 544(b) and 550(a)*
### (Against Abraham Mandel)

254.     The Debtor incorporates by reference the foregoing allegations.

255.     The PSA Down Payment from which the Mandel Transfer was made was property of the Debtor.

256.     The Mandel Transfer was made by the Debtor with the actual intent to hinder, delay, or defraud some or all of the Debtor's then existing and/or future creditors.

257.     Section 544(b) of the Bankruptcy Code allows the Debtor to avoid any transfer of property that is voidable under applicable law by a creditor holding an allowed unsecured claim.

258.     By reason of the foregoing, the Mandel Transfer constituted an avoidable fraudulent transfer under NY Debtor and Creditor Law § 276.

259.     Based on the foregoing, Plaintiff is entitled to an order and judgment against Abraham Mandel: (i) avoiding the Mandel Transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law § 276; and (ii) entitling Plaintiff to recover the amount of the Mandel Transfer, or the value of the Mandel Transfer, from Abraham Mandel under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT XXXIII

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) and 550(a)*
### (Against Abraham Mandel)

260.     The Debtor incorporates by reference the foregoing allegations.

261.     As set forth above, the T&L Transfer constituted an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(B).

- 38 -

262.     The T&L Transfer was made for the benefit of Mandel to the extent the transfer reduced Mandel's obligations under the Anmuth Guarantees.

263.     As an entity for whose benefit the T&L Transfer was made, Plaintiff is entitled to an order and judgment against Abraham Mandel entitling Plaintiff to recover the amount of the T&L Transfer to the extent the transfer reduced Abraham Mandel's obligations under the Anmuth Guarantee, or the value of such, from Abraham Mandel under 11 U.S.C. § 550(a).

## COUNT XXXIV

### *Fraudulent Transfer Under NY Debtor & Creditor Law §§ 270-275 and 11 U.S.C. §§ 544(b) and 550(a)* (**Against Abraham Mandel**)

264.     The Debtor incorporates by reference the foregoing allegations.

265.     As set forth above, the T&L Transfer constitutes an avoidable fraudulent transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law §§ 270-275.

266.     The T&L Transfer was made for the benefit of Mandel to the extent the transfer reduced Mandel's obligations under the Anmuth Guarantees.

267.     Because the T&L Transfer was made for the benefit of Abraham Mandel and not the Debtor, the Debtor did not receive fair consideration for such transfer.

268.     As an entity for whose benefit the T&L Transfer was made, Plaintiff is entitled to an order and judgment against Mandel entitling Plaintiff to recover the amount of the T&L Transfer to the extent the transfer reduced Mandel's obligations under the Anmuth Guarantee., or the value of such transfer, from Mandel under 11 U.S.C. §§ 544(b), 550(a) and NY Debtor and Creditor Law §§ 270-275.

- 39 -

## COUNT XXXV

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(A) and 550(a)*
### (__Against Abraham Mandel__)

269.     The Debtor incorporates by reference the foregoing allegations.

270.     As set forth above, the T&L Transfer constituted an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(A).

271.     The T&L Transfer was made for the benefit of Mandel to the extent the transfer reduced Abraham Mandel's obligations under the Anmuth Guarantees.

272.     As an entity for whose benefit the T&L Transfer was made, Plaintiff is entitled to an order and judgment against Abraham Mandel entitling Plaintiff to recover the amount of the T&L Transfer to the extent the transfer reduced Mandel's obligations under the Anmuth Guarantee, or the value of such, from Abraham Mandel under 11 U.S.C. § 550(a).

## COUNT XXXVI

### *Fraudulent Transfer Under NY Debtor & Creditor Law § 276*
### *and 11 U.S.C. §§ 544(b) and 550(a)*
### (__Against Abraham Mandel__)

273.     The Debtor incorporates by reference the foregoing allegations.

274.     As set forth above, the T&L Transfer constitutes an avoidable fraudulent transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law §§ 276.

275.     The T&L Transfer was made for the benefit of Mandel to the extent the transfer reduced Mandel's obligations under the Anmuth Guarantees.

276.     As an entity for whose benefit the T&L Transfer was made, Plaintiff is entitled to an order and judgment against Abraham Mandel entitling Plaintiff to recover the amount of the T&L Transfer to the extent the transfer reduced Abraham Mandel's obligations under the

467613v2 (SSB)
00990191.2

Anmuth Guarantee., or the value of such transfer, from Abraham Mandel under 11 U.S.C. §§ 544(b), 550(a) and NY Debtor and Creditor Law §§ 276.

## COUNT XXXVII

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) and 550(a)*
### (<u>Against Toby Mandel</u>)

277.    The Debtor incorporates by reference the foregoing allegations.

278.    As set forth above, the T&L Transfer constituted an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(B).

279.    The T&L Transfer was made for the benefit of Toby Mandel to the extent the transfer reduced Toby Mandel's obligations under the Anmuth Guarantees.

280.    As an entity for whose benefit the T&L Transfer was made, Plaintiff is entitled to an order and judgment against Toby Mandel entitling Plaintiff to recover the amount of the T&L Transfer to the extent the transfer reduced Toby Mandel's obligations under the Anmuth Guarantee, or the value of such, from Toby Mandel under 11 U.S.C. § 550(a).

## COUNT XXXVIII

### *Fraudulent Transfer Under NY Debtor & Creditor Law §§ 270-275*
### *and 11 U.S.C. §§ 544(b) and 550(a)*
### (<u>Against Toby Mandel</u>)

281.    The Debtor incorporates by reference the foregoing allegations.

282.    As set forth above, the T&L Transfer constitutes an avoidable fraudulent transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law §§ 270-275.

283.    The T&L Transfer was made for the benefit of Toby Mandel to the extent the transfer reduced Toby Mandel's obligations under the Anmuth Guarantees.

284.    Because the T&L Transfer was made for the benefit of Toby Mandel and not the Debtor, the Debtor did not receive fair consideration for such transfer.

- 41 -

285.     As an entity for whose benefit the T&L Transfer was made, Plaintiff is entitled to an order and judgment against Toby Mandel entitling Plaintiff to recover the amount of the T&L Transfer to the extent the transfer reduced Toby Mandel's obligations under the Anmuth Guarantee, or the value of such transfer, from Toby Mandel under 11 U.S.C. §§ 544(b), 550(a) and NY Debtor and Creditor Law §§ 270-275.

## COUNT XXXIX

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(A) and 550(a)*
### (**Against Toby Mandel**)

286.     The Debtor incorporates by reference the foregoing allegations.

287.     As set forth above, the T&L Transfer constituted an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(A).

288.     The T&L Transfer was made for the benefit of Toby Mandel to the extent the transfer reduced Toby Mandel's obligations under the Anmuth Guarantees.

289.     As an entity for whose benefit the T&L Transfer was made, Plaintiff is entitled to an order and judgment against Toby Mandel entitling Plaintiff to recover the amount of the T&L Transfer to the extent the transfer reduced Toby Mandel's obligations under the Anmuth Guarantee, or the value of such, from Toby Mandel under 11 U.S.C. § 550(a).

## COUNT XL

### *Fraudulent Transfer Under NY Debtor & Creditor Law § 276*
### *and 11 U.S.C. §§ 544(b) and 550(a)*
### (**Against Toby Mandel**)

290.     The Debtor incorporates by reference the foregoing allegations.

291.     As set forth above, the T&L Transfer constitutes an avoidable fraudulent transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law § 276.

- 42 -

292.     The T&L Transfer was made for the benefit of Toby Mandel to the extent the transfer reduced Toby Mandel's obligations under the Anmuth Guarantees.

293.     As an entity for whose benefit the T&L Transfer was made, Plaintiff is entitled to an order and judgment against Toby Mandel entitling Plaintiff to recover the amount of the T&L Transfer to the extent the transfer reduced Toby Mandel's obligations under the Anmuth Guarantee, or the value of such transfer, from Toby Mandel under 11 U.S.C. §§ 544(b), 550(a) and NY Debtor and Creditor Law § 276.

## COUNT XLI

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) and 550(a)*
### (**Against SGG**)

294.     The Debtor incorporates by reference the foregoing allegations.

295.     The PSA Down Payment from which the SGG Transfer was made was property of the Debtor.

296.     The SGG Transfer was made at a time when the Debtor:

297.      Was insolvent or was rendered insolvent by such transfer;

298.     Was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small capital; or

299.     Intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

300.     The Debtor received less than reasonably equivalent value in exchange for the SGG Transfer.  In fact it received no value.

301.     By reason of the foregoing, SGG Transfer constituted an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(B).

- 43 -

302.    Based on the foregoing, Plaintiff is entitled to an order and judgment against SGG: (i) avoiding the SGG Transfer under 11 U.S.C. § 548(a)(1)(B); and (ii) entitling Plaintiff to recover the amount of the SGG Transfer, or the value of the SGG Transfer, from SGG under 11 U.S.C. § 550(a) as an initial transferee.

### COUNT XLII

*Fraudulent Transfer Under NY Debtor & Creditor Law §§ 270-275*
*and 11 U.S.C. §§ 544(b) and 550(a)*
**(Against SGG)**

303.    The Debtor incorporates by reference the foregoing allegations.

304.    The PSA Down Payment from which the SGG Transfer was made was property of the Debtor.

305.    The SGG Transfer was made at a time when the Debtor:

    a.    Was insolvent or was rendered insolvent by such transfer;

    b.    Was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small capital; or

    c.    Intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

306.    The Debtor received less than fair consideration in exchange for the SGG Transfer.  In fact it received no consideration.

307.    Section 544(b) of the Bankruptcy Code allows the Debtor to avoid any transfer of property that is voidable under applicable law by a creditor holding an allowed unsecured claim.

308.    By reason of the foregoing, the SGG Transfer constituted an avoidable fraudulent transfer under NY Debtor and Creditor Law §§ 270-275.

- 44 -

309.    Based on the foregoing, Plaintiff is entitled to an order and judgment against SGG: (i) avoiding the SGG Transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law §§ 270-275; and (ii) entitling Plaintiff to recover the amount of the SGG Transfer, or the value of the SGG Transfer, from SGG under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT XLIII

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(A) and 550(a)*
### (**Against SGG**)

310.    The Debtor incorporates by reference the foregoing allegations.

311.    The PSA Down Payment from which the SGG Transfer was made was property of the Debtor.

312.    The SGG Transfer was made by the Debtor with the actual intent to hinder, delay, or defraud some or all of the Debtor's then existing and/or future creditors.

313.    By reason of the foregoing, the SGG Transfer constituted an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(A).

314.    Based on the foregoing, Plaintiff is entitled to an order and judgment against SGG: (i) avoiding the SGG Transfer under 11 U.S.C. § 548(a)(1)(A); and (ii) entitling Plaintiff to recover the amount of the SGG Transfer, or the value of the SGG Transfer, from SGG under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT XLIV

### *Fraudulent Transfer Under NY Debtor & Creditor Law § 276*
### *and 11 U.S.C. §§ 544(b) and 550(a)*
### (**Against SGG**)

315.    The Debtor incorporates by reference the foregoing allegations.

316.    The PSA Down Payment from which the SGG Transfer was made was property of the Debtor.

- 45 -

317.    The SGG Transfer was made by the Debtor with the actual intent to hinder, delay, or defraud some or all of the Debtor's then existing and/or future creditors.

318.    Section 544(b) of the Bankruptcy Code allows the Debtor to avoid any transfer of property that is voidable under applicable law by a creditor holding an allowed unsecured claim.

319.    By reason of the foregoing, the SGG Transfer constituted an avoidable fraudulent transfer under NY Debtor and Creditor Law § 276.

320.    Based on the foregoing, Plaintiff is entitled to an order and judgment against SGG: (i) avoiding the SGG Transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law § 276; and (ii) entitling Plaintiff to recover the amount of the SGG Transfer, or the value of the SGG Transfer, from SGG under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT XLV

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) and 550(a)*
### (**Against Brunner**)

321.    The Debtor incorporates by reference the foregoing allegations.

322.    As set forth above, the T&L Transfer constituted an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(B).

323.    The T&L Transfer was made for the benefit of Brunner to the extent the transfer reduced Brunner's obligations under the Anmuth Guarantees.

324.    As an entity for whose benefit the T&L Transfer was made, Plaintiff is entitled to an order and judgment against Brunner entitling Plaintiff to recover the amount of the T&L Transfer to the extent the transfer reduced Brunner's obligations under the Anmuth Guarantee, or the value of such, from Bruner under 11 U.S.C. § 550(a).

- 46 -

## COUNT XLVI

### *Fraudulent Transfer Under NY Debtor & Creditor Law §§ 270-275 and 11 U.S.C. §§ 544(b) and 550(a)* (**Against Brunner**)

325.    The Debtor incorporates by reference the foregoing allegations.

326.    As set forth above, the T&L Transfer constitutes an avoidable fraudulent transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law §§ 270-275.

327.    The T&L Transfer was made for the benefit of Brunner to the extent the transfer reduced Brunner's obligations under the Anmuth Guarantees.

328.    Because the T&L Transfer was made for the benefit of Brunner and not the Debtor, the Debtor did not receive fair consideration for such transfer.

329.    As an entity for whose benefit the T&L Transfer was made, Plaintiff is entitled to an order and judgment against Brunner entitling Plaintiff to recover the amount of the T&L Transfer to the extent the transfer reduced Brunner's obligations under the Anmuth Guarantee., or the value of such transfer, from Mandel under 11 U.S.C. §§ 544(b), 550(a) and NY Debtor and Creditor Law §§ 270-275.

## COUNT XLVII

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(A) and 550(a)* (**Against Brunner**)

330.    The Debtor incorporates by reference the foregoing allegations.

331.    As set forth above, the T&L Transfer constituted an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(A).

332.    The T&L Transfer was made for the benefit of Brunner to the extent the transfer reduced Brunner's obligations under the Anmuth Guarantees.

- 47 -

333.    As an entity for whose benefit the T&L Transfer was made, Plaintiff is entitled to an order and judgment against Brunner entitling Plaintiff to recover the amount of the T&L Transfer to the extent the transfer reduced Brunner's obligations under the Anmuth Guarantee, or the value of such, from Bruner under 11 U.S.C. § 550(a).

## COUNT XLVIII

### *Fraudulent Transfer Under NY Debtor & Creditor Law § 276 and 11 U.S.C. §§ 544(b) and 550(a)* (**Against Brunner**)

334.    The Debtor incorporates by reference the foregoing allegations.

335.    As set forth above, the T&L Transfer constitutes an avoidable fraudulent transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law § 276.

336.    The T&L Transfer was made for the benefit of Brunner to the extent the transfer reduced Brunner's obligations under the Anmuth Guarantees.

337.    As an entity for whose benefit the T&L Transfer was made, Plaintiff is entitled to an order and judgment against Brunner entitling Plaintiff to recover the amount of the T&L Transfer to the extent the transfer reduced Brunner's obligations under the Anmuth Guarantee., or the value of such transfer, from Mandel under 11 U.S.C. §§ 544(b), 550(a) and NY Debtor and Creditor Law § 276.

## COUNT XLIX

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) and 550(a)* (**Against Brunner**)

338.    The Debtor incorporates by reference the foregoing allegations.

339.    As set forth above, the SGG Transfer constituted an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(B).

340.    The SGG Transfer was made for the benefit of Brunner.

- 48 -

341.     As an entity for whose benefit the SGG Transfer was made, Plaintiff is entitled to an order and judgment against Brunner entitling Plaintiff to recover the amount of the SGG Transfer, or the value of the SGG Transfer, from Brunner under 11 U.S.C. § 550(a).

## COUNT L

### Fraudulent Transfer Under NY Debtor & Creditor Law §§ 270-275 and 11 U.S.C. §§ 544(b) and 550(a) (<u>Against Brunner</u>)

342.     The Debtor incorporates by reference the foregoing allegations.

343.     As set forth above, the SGG Transfer constitutes an avoidable fraudulent transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law §§ 270-275.

344.     The SGG Transfer was made for the benefit of Brunner.

345.     Because the SGG Transfer was made for the benefit of Brunner and not the Debtor, the Debtor did not receive fair consideration for such transfer.

346.     As an entity for whose benefit the SGG Transfer was made, Plaintiff is entitled to an order and judgment against Brunner entitling Plaintiff to recover the amount of the SGG Transfer, or the value of the SGG Transfer, from Brunner under 11 U.S.C. §§ 544(b), 550(a) and NY Debtor and Creditor Law §§ 270-275.

## COUNT LI

### Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(A) and 550(a) (<u>Against Brunner</u>)

347.     The Debtor incorporates by reference the foregoing allegations.

348.     As set forth above, the SGG Transfer constituted an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(A).

349.     The SGG Transfer was made for the benefit of Brunner.

- 49 -

350.     As an entity for whose benefit the SGG Transfer was made, Plaintiff is entitled to an order and judgment against Brunner entitling Plaintiff to recover the amount of the SGG Transfer, or the value of the SGG Transfer, from Brunner under 11 U.S.C. § 550(a).

## COUNT LII

### Fraudulent Transfer Under NY Debtor & Creditor Law § 276 and 11 U.S.C. §§ 544(b) and 550(a) (<u>Against Brunner</u>)

351.     The Debtor incorporates by reference the foregoing allegations.

352.     As set forth above, the SGG Transfer constitutes an avoidable fraudulent transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law § 276.

353.     The SGG Transfer was made for the benefit of Brunner.

354.     As an entity for whose benefit the SGG Transfer was made, Plaintiff is entitled to an order and judgment against Brunner entitling Plaintiff to recover the amount of the SGG Transfer, or the value of the SGG Transfer, from Brunner under 11 U.S.C. §§ 544(b), 550(a) and NY Debtor and Creditor Law § 276.

## COUNT LIII

### Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) and 550(a) (<u>Against Segal</u>)

355.     The Debtor incorporates by reference the foregoing allegations.

356.     The PSA Down Payment from which the Segal Transfer was made was property of the Debtor.

357.     The Segal Transfer was made at a time when the Debtor:

a.     Was insolvent or was rendered insolvent by such transfer;

467613v2 (SSB)
00990191.2

     b.      Was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small capital; or

     c.      Intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

358.     The Debtor received less than reasonably equivalent value in exchange for the Segal Transfer. In fact it received no value.

359.     By reason of the foregoing, the Segal Transfer constituted an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(B).

360.     Based on the foregoing, Plaintiff is entitled to an order and judgment against Segal: (i) avoiding the Segal Transfer under 11 U.S.C. § 548(a)(1)(B); and (ii) entitling plaintiff to recover the amount of the Segal Transfer, or the value of the Segal Transfer, from Segal under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT LIV

### *Fraudulent Transfer Under NY Debtor & Creditor Law §§ 270-275 and 11 U.S.C. §§ 544(b) and 550(a) (Against Segal)*

361.     The Debtor incorporates by reference the foregoing allegations.

362.     The PSA Down Payment from which the Segal Transfer was made was property of the Debtor.

363.     The Segal Transfer was made at a time when the Debtor:

     a.      Was insolvent or was rendered insolvent by such transfer;

     b.      Was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small capital; or

- 51 -

      c.      Intended to incur, or believed that it would incur, debts that would be

beyond its ability to pay as such debts matured.

364.    The Debtor received less than fair consideration in exchange for the Segal

Transfer.  In fact it received no consideration.

365.    Section 544(b) of the Bankruptcy Code allows the Debtor to avoid any transfer of

property that is voidable under applicable law by a creditor holding an allowed unsecured claim.

366.    By reason of the foregoing, the Segal Transfer constituted an avoidable fraudulent

transfer under NY Debtor and Creditor Law §§ 270-275.

367.    Based on the foregoing, Plaintiff is entitled to an order and judgment against

Mega: (i) avoiding the Segal Transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor

Law §§ 270-275; and (ii) entitling Plaintiff to recover the amount of the Segal Transfer, or the

value of Segal Transfer, from Segal under 11 U.S.C. § 550(a) as an initial transferee.

### COUNT LV

***Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(A) and 550(a)***
**(Against Segal)**

368.    The Debtor incorporates by reference the foregoing allegations.

369.    The PSA Down Payment from which the Segal Transfer was made was property

of the Debtor.

370.    The Segal Transfer was made by the Debtor with the actual intent to hinder,

delay, or defraud some or all of the Debtor's then existing and/or future creditors.

371.    By reason of the foregoing, the Segal Transfer constituted an avoidable fraudulent

transfer under 11 U.S.C. § 548(a)(1)(A).

372.    Based on the foregoing, Plaintiff is entitled to an order and judgment against

Segal: (i) avoiding the Segal Transfer under 11 U.S.C. § 548(a)(1)(A); and (ii) entitling Plaintiff

- 52 -

to recover the amount of the Segal Transfer, or the value of the Segal Transfer, from Segal under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT LVI

### *Fraudulent Transfer Under NY Debtor & Creditor Law § 276*
### *and 11 U.S.C. §§ 544(b) and 550(a)*
### (**Against Segal**)

373.    The Debtor incorporates by reference the foregoing allegations.

374.    The PSA Down Payment from which the Segal Transfer was made was property of the Debtor.

375.    The Segal Transfer was made by the Debtor with the actual intent to hinder, delay, or defraud some or all of the Debtor's then existing and/or future creditors.

376.    Section 544(b) of the Bankruptcy Code allows the Debtor to avoid any transfer of property that is voidable under applicable law by a creditor holding an allowed unsecured claim.

377.    By reason of the foregoing, the Segal Transfer constituted an avoidable fraudulent transfer under NY Debtor and Creditor Law § 276.

378.    Based on the foregoing, Plaintiff is entitled to an order and judgment against Segal: (i) avoiding the Segal Transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law § 276; and (ii) entitling Plaintiff to recover the amount of the Segal Transfer, or the value of the Segal Transfer, from Segal under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT LVII

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) and 550(a)*
### (**Against Janklowicz**)

379.    The Debtor incorporates by reference the foregoing allegations.

380.    The PSA Down Payment from which the Janklowicz Transfer was made was property of the Debtor.

- 53 -

381.    The Janklowicz Transfer was made at a time when the Debtor:

a.    Was insolvent or was rendered insolvent by such transfer;

b.    Was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small capital; or

c.    Intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

382.    The Debtor received less than reasonably equivalent value in exchange for the Janklowicz Transfer.  In fact it received no value.

383.    By reason of the foregoing, the Janklowicz Transfer constituted an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(B).

384.    Based on the foregoing, Plaintiff is entitled to an order and judgment against Janklowicz Capital: (i) avoiding the Janklowicz Transfer under 11 U.S.C. § 548(a)(1)(B); and (ii) entitling plaintiff to recover the amount of the Janklowicz Transfer, or the value of the Janklowicz Transfer, from Janklowicz under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT LVIII

***Fraudulent Transfer Under NY Debtor & Creditor Law §§ 270-275
and 11 U.S.C. §§ 544(b) and 550(a)***
**(Against Janklowicz)**

385.    The Debtor incorporates by reference the foregoing allegations.

386.    The PSA Down Payment from which the Janklowicz Transfer was made was property of the Debtor.

387.    The Janklowicz Transfer was made at a time when the Debtor:

a.    Was insolvent or was rendered insolvent by such transfer;

- 54 -

b.      Was engaged in a business or transaction, or was about to engage in a

business or transaction, for which any property remaining with the Debtor

was an unreasonably small capital; or

c.      Intended to incur, or believed that it would incur, debts that would be

beyond its ability to pay as such debts matured.

388.    The Debtor received less than fair consideration in exchange for the Janklowicz

Transfer.  In fact it received no consideration.

389.    Section 544(b) of the Bankruptcy Code allows the Debtor to avoid any transfer of

property that is voidable under applicable law by a creditor holding an allowed unsecured claim.

390.    By reason of the foregoing, the Janklowicz Transfer constituted an avoidable

fraudulent transfer under NY Debtor and Creditor Law §§ 270-275.

391.    Based on the foregoing, Plaintiff is entitled to an order and judgment against

Janklowicz: (i) avoiding the Janklowicz Transfer under 11 U.S.C. § 544(b) and NY Debtor and

Creditor Law §§ 270-275; and (ii) entitling Plaintiff to recover the amount of the Janklowicz

Capital Transfer, or the value of Janklowicz Transfer, from Janklowicz under 11 U.S.C. § 550(a)

as an initial transferee.

## COUNT LIX

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(A) and 550(a)*
### **(Against Janklowicz)**

392.    The Debtor incorporates by reference the foregoing allegations.

393.    The PSA Down Payment from which the Janklowicz Transfer was made was

property of the Debtor.

394.    The Janklowicz Transfer was made by the Debtor with the actual intent to hinder,

delay, or defraud some or all of the Debtor's then existing and/or future creditors.

- 55 -

395.   By reason of the foregoing, the Janklowicz Transfer constituted an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(A).

396.   Based on the foregoing, Plaintiff is entitled to an order and judgment against Janklowicz: (i) avoiding the Janklowicz Transfer under 11 U.S.C. § 548(a)(1)(A); and (ii) entitling Plaintiff to recover the amount of the Janklowicz Transfer, or the value of the Janklowicz Transfer, from Janklowicz  under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT LX

### *Fraudulent Transfer Under NY Debtor & Creditor Law § 276 and 11 U.S.C. §§ 544(b) and 550(a)* (**Against Janklowicz**)

397.   The Debtor incorporates by reference the foregoing allegations.

398.   The PSA Down Payment from which the Janklowicz Transfer was made was property of the Debtor.

399.   The Janklowicz Transfer was made by the Debtor with the actual intent to hinder, delay, or defraud some or all of the Debtor's then existing and/or future creditors.

400.   Section 544(b) of the Bankruptcy Code allows the Debtor to avoid any transfer of property that is voidable under applicable law by a creditor holding an allowed unsecured claim.

401.   By reason of the foregoing, the Janklowicz Transfer constituted an avoidable fraudulent transfer under NY Debtor and Creditor Law § 276.

402.   Based on the foregoing, Plaintiff is entitled to an order and judgment against Janklowicz: (i) avoiding the Janklowicz Transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law § 276; and (ii) entitling Plaintiff to recover the amount of the Janklowicz Transfer, or the value of the Janklowicz Transfer, from Janklowicz under 11 U.S.C. § 550(a) as an initial transferee.

- 56 -

## COUNT LXI

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) and 550(a)*
### (Against M. Lowy)

403.    The Debtor incorporates by reference the foregoing allegations.

404.    The PSA Down Payment from which the M. Lowy Transfer was made was property of the Debtor.

405.    The M. Lowy Transfer was made at a time when the Debtor:

    a.    Was insolvent or was rendered insolvent by such transfer;

    b.    Was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small capital; or

    c.    Intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

406.    The Debtor received less than reasonably equivalent value in exchange for the M. Lowy Transfer.  In fact it received no value.

407.    By reason of the foregoing, the M. Lowy Transfer constituted an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(B).

408.    Based on the foregoing, Plaintiff is entitled to an order and judgment against M. Lowy: (i) avoiding the M. Lowy Transfer under 11 U.S.C. § 548(a)(1)(B); and (ii) entitling plaintiff to recover the amount of the M. Lowy Transfer, or the value of the M. Lowy Transfer, from M. Lowy under 11 U.S.C. § 550(a) as an initial transferee.

467613v2 (SSB)
00990191.2

## COUNT LXII

***Fraudulent Transfer Under NY Debtor & Creditor Law §§ 270-275
and 11 U.S.C. §§ 544(b) and 550(a)
(Against M. Lowy)***

409.    The Debtor incorporates by reference the foregoing allegations.

410.    The PSA Down Payment from which the M. Lowy Transfer was made was property of the Debtor.

411.    The M. Lowy Transfer was made at a time when the Debtor:

    a.    Was insolvent or was rendered insolvent by such transfer;

    b.    Was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small capital; or

    c.    Intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

412.    The Debtor received less than fair consideration in exchange for the M. Lowy Transfer.  In fact it received no consideration.

413.    Section 544(b) of the Bankruptcy Code allows the Debtor to avoid any transfer of property that is voidable under applicable law by a creditor holding an allowed unsecured claim.

414.    By reason of the foregoing, the M. Lowy Transfer constituted an avoidable fraudulent transfer under NY Debtor and Creditor Law §§ 270-275.

415.    Based on the foregoing, Plaintiff is entitled to an order and judgment against M. Lowy: (i) avoiding the M. Lowy Transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law §§ 270-275; and (ii) entitling Plaintiff to recover the amount of the M. Lowy Transfer, or the value of M. Lowy Transfer, from Lowy under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT LXIII

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(A) and 550(a)*
### (<u>Against M. Lowy</u>)

416.    The Debtor incorporates by reference the foregoing allegations.

417.    The PSA Down Payment from which the M. Lowy Transfer was made was property of the Debtor.

418.    The M. Lowy Transfer was made by the Debtor with the actual intent to hinder, delay, or defraud some or all of the Debtor's then existing and/or future creditors.

419.    By reason of the foregoing, the M. Lowy Transfer constituted an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(A).

420.    Based on the foregoing, Plaintiff is entitled to an order and judgment against M. Lowy: (i) avoiding the M. Lowy Transfer under 11 U.S.C. § 548(a)(1)(A); and (ii) entitling Plaintiff to recover the amount of the M. Lowy Transfer, or the value of the M. Lowy Transfer, from M. Lowy under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT LXIV

### *Fraudulent Transfer Under NY Debtor & Creditor Law § 276*
### *and 11 U.S.C. §§ 544(b) and 550(a)*
### (<u>Against M. Lowy</u>)

421.    The Debtor incorporates by reference the foregoing allegations.

422.    The PSA Down Payment from which the M. Lowy Transfer was made was property of the Debtor.

423.    The M. Lowy Transfer was made by the Debtor with the actual intent to hinder, delay, or defraud some or all of the Debtor's then existing and/or future creditors.

424.    Section 544(b) of the Bankruptcy Code allows the Debtor to avoid any transfer of property that is voidable under applicable law by a creditor holding an allowed unsecured claim.

- 59 -

425.   By reason of the foregoing, the M. Lowy Transfer constituted an avoidable fraudulent transfer under NY Debtor and Creditor Law § 276.

426.   Based on the foregoing, Plaintiff is entitled to an order and judgment against M. Lowy: (i) avoiding the M. Lowy Transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law § 276; and (ii) entitling Plaintiff to recover the amount of the M. Lowy Transfer, or the value of the M. Lowy Transfer, from M. Lowy under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT LXV

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) and 550(a)*
### (<u>Against Kirschner</u>)

427.   The Debtor incorporates by reference the foregoing allegations.

428.   The PSA Down Payment from which the Kirschner Transfer was made was property of the Debtor.

429.   The Kirschner Transfer was made at a time when the Debtor:

    a.    Was insolvent or was rendered insolvent by such transfer;

    b.    Was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small capital; or

    c.    Intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

430.   The Debtor received less than reasonably equivalent value in exchange for the Kirschner Transfer.  In fact it received no value.

431.   By reason of the foregoing, the Kirschner Transfer constituted an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(B).

- 60 -

432.    Based on the foregoing, Plaintiff is entitled to an order and judgment against Kirschner: (i) avoiding the Kirschner Transfer under 11 U.S.C. § 548(a)(1)(B); and (ii) entitling plaintiff to recover the amount of the Kirschner Transfer, or the value of the Kirschner Transfer, from Kirschner under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT LXVI

### *Fraudulent Transfer Under NY Debtor & Creditor Law §§ 270-275*
### *and 11 U.S.C. §§ 544(b) and 550(a)*
### (**Against Kirschner**)

433.    The Debtor incorporates by reference the foregoing allegations.

434.    The PSA Down Payment from which the Kirschner Transfer was made was property of the Debtor.

435.    The Kirschner Transfer was made at a time when the Debtor:

  a.    Was insolvent or was rendered insolvent by such transfer;

  b.    Was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small capital; or

  c.    Intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

436.    The Debtor received less than fair consideration in exchange for the Kirschner Transfer.  In fact it received no consideration.

437.    Section 544(b) of the Bankruptcy Code allows the Debtor to avoid any transfer of property that is voidable under applicable law by a creditor holding an allowed unsecured claim.

438.    By reason of the foregoing, the Kirschner Transfer constituted an avoidable fraudulent transfer under NY Debtor and Creditor Law §§ 270-275.

467613v2 (SSB)
00990191.2

439.    Based on the foregoing, Plaintiff is entitled to an order and judgment against Mega: (i) avoiding the Kirschner Transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law §§ 270-275; and (ii) entitling Plaintiff to recover the amount of the Kirschner Transfer, or the value of Kirschner Transfer, from Kirschner under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT LXVII

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(A) and 550(a)*
### (**Against Kirschner**)

440.    The Debtor incorporates by reference the foregoing allegations.

441.    The PSA Down Payment from which the Kirschner Transfer was made was property of the Debtor.

442.    The Kirschner Transfer was made by the Debtor with the actual intent to hinder, delay, or defraud some or all of the Debtor's then existing and/or future creditors.

443.    By reason of the foregoing, the Kirschner Transfer constituted an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(A).

444.    Based on the foregoing, Plaintiff is entitled to an order and judgment against Kirschner: (i) avoiding the Kirschner Transfer under 11 U.S.C. § 548(a)(1)(A); and (ii) entitling Plaintiff to recover the amount of the Kirschner Transfer, or the value of the Kirschner Transfer, from Kirschner under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT LXVIII

### *Fraudulent Transfer Under NY Debtor & Creditor Law § 276*
### *and 11 U.S.C. §§ 544(b) and 550(a)*
### (**Against Kirschner**)

445.    The Debtor incorporates by reference the foregoing allegations.

446.    The PSA Down Payment from which the Kirschner Transfer was made was property of the Debtor.

467613v2 (SSB)
00990191.2

447.    The Kirschner Transfer was made by the Debtor with the actual intent to hinder, delay, or defraud some or all of the Debtor's then existing and/or future creditors.

448.    Section 544(b) of the Bankruptcy Code allows the Debtor to avoid any transfer of property that is voidable under applicable law by a creditor holding an allowed unsecured claim.

449.    By reason of the foregoing, the Kirschner Transfer constituted an avoidable fraudulent transfer under NY Debtor and Creditor Law § 276.

450.    Based on the foregoing, Plaintiff is entitled to an order and judgment against Kirschner: (i) avoiding the Kirschner Transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law § 276; and (ii) entitling Plaintiff to recover the amount of the Kirschner Transfer, or the value of the Kirschner Transfer, from Kirschner under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT LXIX

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) and 550(a)*
### (**Against J. Lowy**)

451.    The Debtor incorporates by reference the foregoing allegations.

452.    The PSA Down Payment from which the J. Lowy Transfer was made was property of the Debtor.

453.    The J. Lowy Transfer was made at a time when the Debtor:

    a.    Was insolvent or was rendered insolvent by such transfer;

    b.    Was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small capital; or

    c.    Intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

- 63 -

454.     The Debtor received less than reasonably equivalent value in exchange for the J. Lowy Transfer.  In fact it received no value.

455.     By reason of the foregoing, the J. Lowy Transfer constituted an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(B).

456.     Based on the foregoing, Plaintiff is entitled to an order and judgment against J. Lowy: (i) avoiding the J. Lowy Transfer under 11 U.S.C. § 548(a)(1)(B); and (ii) entitling plaintiff to recover the amount of the J. Lowy Transfer, or the value of the J. Lowy Transfer, from J. Lowy under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT LXX

### *Fraudulent Transfer Under NY Debtor & Creditor Law §§ 270-275 and 11 U.S.C. §§ 544(b) and 550(a)* (<u>**Against J. Lowy**</u>)

457.     The Debtor incorporates by reference the foregoing allegations.

458.     The PSA Down Payment from which the J. Lowy Transfer was made was property of the Debtor.

459.     The J. Lowy Transfer was made at a time when the Debtor:

    a.     Was insolvent or was rendered insolvent by such transfer;

    b.     Was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small capital; or

    c.     Intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

460.     The Debtor received less than fair consideration in exchange for the J. Lowy Transfer.  In fact it received no consideration.

- 64 -

461.    Section 544(b) of the Bankruptcy Code allows the Debtor to avoid any transfer of property that is voidable under applicable law by a creditor holding an allowed unsecured claim.

462.    By reason of the foregoing, the J. Lowy Transfer constituted an avoidable fraudulent transfer under NY Debtor and Creditor Law §§ 270-275.

463.    Based on the foregoing, Plaintiff is entitled to an order and judgment against Mega: (i) avoiding the J. Lowy Transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law §§ 270-275; and (ii) entitling Plaintiff to recover the amount of the J. Lowy Transfer, or the value of J. Lowy Transfer, from J. Lowy under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT LXXI

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(A) and 550(a)*
### (Against L. Lowy)

464.    The Debtor incorporates by reference the foregoing allegations.

465.    The PSA Down Payment from which the J. Lowy Transfer was made was property of the Debtor.

466.    The J. Lowy Transfer was made by the Debtor with the actual intent to hinder, delay, or defraud some or all of the Debtor's then existing and/or future creditors.

467.    By reason of the foregoing, the J. Lowy Transfer constituted an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(A).

468.    Based on the foregoing, Plaintiff is entitled to an order and judgment against J. Lowy: (i) avoiding the J. Lowy Transfer under 11 U.S.C. § 548(a)(1)(A); and (ii) entitling Plaintiff to recover the amount of the J. Lowy Transfer, or the value of the J. Lowy Transfer, from J. Lowy under 11 U.S.C. § 550(a) as an initial transferee.

467613v2 (SSB)
00990191.2

## COUNT LXXII

### *Fraudulent Transfer Under NY Debtor & Creditor Law § 276 and 11 U.S.C. §§ 544(b) and 550(a)* (**Against J. Lowy**)

469.    The Debtor incorporates by reference the foregoing allegations.

470.    The PSA Down Payment from which the J. Lowy Transfer was made was property of the Debtor.

471.    The J. Lowy Transfer was made by the Debtor with the actual intent to hinder, delay, or defraud some or all of the Debtor's then existing and/or future creditors.

472.    Section 544(b) of the Bankruptcy Code allows the Debtor to avoid any transfer of property that is voidable under applicable law by a creditor holding an allowed unsecured claim.

473.    By reason of the foregoing, the J. Lowy Transfer constituted an avoidable fraudulent transfer under NY Debtor and Creditor Law § 276.

474.    Based on the foregoing, Plaintiff is entitled to an order and judgment against J. Lowy: (i) avoiding the J. Lowy Transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law § 276; and (ii) entitling Plaintiff to recover the amount of the J. Lowy Transfer, or the value of the J. Lowy Transfer, from J. Lowy under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT LXXIII

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) and 550(a)* (**Against Greenfeld**)

475.    The Debtor incorporates by reference the foregoing allegations.

476.    The PSA Down Payment from which the Greenfeld Transfer was made was property of the Debtor.

477.    The Greenfeld Transfer was made at a time when the Debtor:

  a.    Was insolvent or was rendered insolvent by such transfer;

- 66 -

    b.      Was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small capital; or

    c.      Intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

478.    The Debtor received less than reasonably equivalent value in exchange for the Greenfeld Transfer.  In fact it received no value.

479.    By reason of the foregoing, the Greenfeld Transfer constituted an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(B).

480.    Based on the foregoing, Plaintiff is entitled to an order and judgment against Greenfeld: (i) avoiding the Greenfeld Transfer under 11 U.S.C. § 548(a)(1)(B); and (ii) entitling plaintiff to recover the amount of the Greenfeld Transfer, or the value of the Greenfeld Transfer, from Greenfeld under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT LXXIV

### *Fraudulent Transfer Under NY Debtor & Creditor Law §§ 270-275 and 11 U.S.C. §§ 544(b) and 550(a)*
### (**Against Greenfeld**)

481.    The Debtor incorporates by reference the foregoing allegations.

482.    The PSA Down Payment from which the Greenfeld Transfer was made was property of the Debtor.

483.    The Greenfeld Transfer was made at a time when the Debtor:

    a.      Was insolvent or was rendered insolvent by such transfer;

    b.      Was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small capital; or

- 67 -

484.    Intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

485.    The Debtor received less than fair consideration in exchange for the Greenfeld Transfer.  In fact it received no consideration.

486.    Section 544(b) of the Bankruptcy Code allows the Debtor to avoid any transfer of property that is voidable under applicable law by a creditor holding an allowed unsecured claim.

487.    By reason of the foregoing, the Greenfeld Transfer constituted an avoidable fraudulent transfer under NY Debtor and Creditor Law §§ 270-275.

488.    Based on the foregoing, Plaintiff is entitled to an order and judgment against Mega: (i) avoiding the Greenfield Transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law §§ 270-275; and (ii) entitling Plaintiff to recover the amount of the Greenfeld Transfer, or the value of the Greenfeld Transfer, from Greenfeld under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT LXXV

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(A) and 550(a)*
### (__Against Greenfeld__)

489.    The Debtor incorporates by reference the foregoing allegations.

490.    The PSA Down Payment from which the Greenfeld Transfer was made was property of the Debtor.

491.    The Greenfeld Transfer was made by the Debtor with the actual intent to hinder, delay, or defraud some or all of the Debtor's then existing and/or future creditors.

492.    By reason of the foregoing, the Greenfeld Transfer constituted an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(1)(A).

- 68 -

493.     Based on the foregoing, Plaintiff is entitled to an order and judgment against Greenfeld: (i) avoiding the Greenfeld Transfer under 11 U.S.C. § 548(a)(1)(A); and (ii) entitling Plaintiff to recover the amount of the Greenfeld Transfer, or the value of the Greenfeld Transfer, from Greenfeld under 11 U.S.C. § 550(a) as an initial transferee.

## COUNT LXXVI

### *Fraudulent Transfer Under NY Debtor & Creditor Law § 276*
### *and 11 U.S.C. §§ 544(b) and 550(a)*
### (**Against Greenfeld**)

494.     The Debtor incorporates by reference the foregoing allegations.

495.     The PSA Down Payment from which the Greenfeld Transfer was made was property of the Debtor.

496.     The Greenfeld Transfer was made by the Debtor with the actual intent to hinder, delay, or defraud some or all of the Debtor's then existing and/or future creditors.

497.     Section 544(b) of the Bankruptcy Code allows the Debtor to avoid any transfer of property that is voidable under applicable law by a creditor holding an allowed unsecured claim.

498.     By reason of the foregoing, the Greenfeld Transfer constituted an avoidable fraudulent transfer under NY Debtor and Creditor Law § 276.

499.     Based on the foregoing, Plaintiff is entitled to an order and judgment against Greenfeld: (i) avoiding the Greenfeld Transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law § 276; and (ii) entitling Plaintiff to recover the amount of the Greenfeld Transfer, or the value of the Greenfeld Transfer, from Greenfeld under 11 U.S.C. § 550(a) as an initial transferee.

- 69 -

## COUNT LXXVII

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(B) and 550(a)*
### (<u>Against Renatus</u>)

500.    The Debtor incorporates by reference the foregoing allegations.

501.    As set forth above, the Renatus/Herrick Transfer constituted avoidable fraudulent transfers under 11 U.S.C. § 548(a)(1)(B).

502.    The Renatus/Herrick Transfer was made for the benefit of Renatus.

503.    As an entity for whose benefit the Renatus/Herrick Transfer was made, Plaintiff is entitled to an order and judgment against Renatus entitling Plaintiff to recover the amount of the Renatus/Herrick Transfer, or the value of the Renatus/Herrick Transfer, from Renatus under 11 U.S.C. § 550(a).

## COUNT LXXVIII

### *Fraudulent Transfer Under NY Debtor & Creditor Law §§ 270-275*
### *and 11 U.S.C. §§ 544(b) and 550(a)*
### (<u>Against Renatus</u>)

504.    The Debtor incorporates by reference the foregoing allegations.

505.    As set forth above, the Renatus/Herrick Transfer constitutes an avoidable fraudulent transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law §§ 270-275.

506.    The Renatus/Herrick Transfer was made for the benefit of Renatus.

507.    Because the Renatus/Herrick Transfer was made for the benefit of Renatus and not the Debtor, the Debtor did not receive fair consideration for such transfer.

508.    As an entity for whose benefit the Renatus/Herrick Transfer was made, Plaintiff is entitled to an order and judgment against Renatus entitling Plaintiff to recover the amount of the Renatus/Herrick Transfer, or the value of the Renatus/Herrick Transfer, from Renatus under 11 U.S.C. §§ 544(b), 550(a) and NY Debtor and Creditor Law §§ 270-275.

- 70 -

## COUNT LXXIX

### *Fraudulent Transfer Under 11 U.S.C. §§ 548(a)(1)(A) and 550(a)*
(**Against Renatus**)

509.    The Debtor incorporates by reference the foregoing allegations.

510.    As set forth above, the Renatus/Herrick Transfer constituted avoidable fraudulent transfers under 11 U.S.C. § 548(a)(1)(A).

511.    The Renatus/Herrick Transfer was made for the benefit of Renatus.

512.    As an entity for whose benefit the Renatus/Herrick Transfer was made, Plaintiff is entitled to an order and judgment against Renatus entitling Plaintiff to recover the amount of the Renatus/Herrick Transfer, or the value of the Renatus/Herrick Transfer, from Renatus under 11 U.S.C. § 550(a).

## COUNT LXXX

### *Fraudulent Transfer Under NY Debtor & Creditor Law § 276 and 11 U.S.C. §§ 544(b) and 550(a)*
(**Against Renatus**)

513.    The Debtor incorporates by reference the foregoing allegations.

514.    As set forth above, the Renatus/Herrick Transfer constitutes an avoidable fraudulent transfer under 11 U.S.C. § 544(b) and NY Debtor and Creditor Law § 276.

515.    The Renatus/Herrick Transfer was made for the benefit of Renatus.

516.    As an entity for whose benefit the Renatus/Herrick Transfer was made, Plaintiff is entitled to an order and judgment against Renatus entitling Plaintiff to recover the amount of the Renatus/Herrick Transfer, or the value of the Renatus/Herrick Transfer, from Renatus under 11 U.S.C. §§ 544(b), 550(a) and NY Debtor and Creditor Law § 276.

## COUNT LXXXI

### *Disallowance of Claims Pursuant to 11 U.S.C. § 502(d)*
(**Against All Defendants**)

- 71 -

517.    The Debtor incorporates by reference the foregoing allegations.

518.    Each defendant is the recipient of a portion of the PSA Down Payment, or is an individual or entity for which such transfers were made, such transfer being avoidable and recoverable under 11 U.S.C. §§ 544, 548(a), and 550 and NY Debtor and Creditor Law §§ 270-276.

519.    Based on the foregoing, and pursuant to 11 U.S.C. § 502(d), any claims filed by defendants or scheduled in favor of the defendants against Debtor must be disallowed unless and until they return the portion of the PSA Down Payment transferred to each Defendant.

**WHEREFORE**, the Debtor requests that judgment be entered in its favor as follows:

A.      As to Counts I through IV, avoiding the Meridian Transfer and awarding damages in favor of Debtor and against Meridian in an amount no less than $1,500,000.

B.      As to Counts V through VIII, avoiding the Mega Transfer and awarding damages in favor of Debtor and against Mega in an amount no less than $2,827,312.77.

C.      As to Counts IX through XII, avoiding the Mega Transfer and awarding damages in favor of Debtor and against Crown Mansion in an amount no less than $2,827,312.77.

D.      As to Counts XIII through XVI, avoiding the Mega Transfer and awarding damages in favor of Debtor and against Zhu in an amount no less than $2,827,312.77.

E.      As to Counts XVII through XX, avoiding the Congregation Transfer and awarding damages in favor of Debtor and against Congregation in an amount no less than $2,000,000.

F.      As to Counts XXI through XXIV, avoiding the Congregation Transfer and

467613v2 (SSB)
00990191.2

awarding damages in favor of Debtor and against Babad in an amount no less than $2,000,000.

G.     As to Counts XXV through XXVIII, avoiding the Reliable Transfer and awarding damages in favor of Debtor and against Reliable in an amount no less than $500,000.

H.     As to Counts XXIX through XXXII, avoiding the Mandel Transfer and awarding damages in favor of Debtor and against Abraham Mandel in an amount no less than $1,000,000.

I.     As to Counts XXXIII through XXXVI, avoiding the T&L Transfer and awarding damages in favor of Debtor and against Abraham Mandel in an amount no less than $ 5,600,000.00.

J.     As to Counts XXXVII through XL, avoiding the T&L Transfer and awarding damages in favor of Debtor and against Toby Mandel in an amount no less than $5,600,000.00.

K.     As to Counts XLI through XLIV, avoiding the SGG Transfer and awarding damages in favor of Debtor and against Silver Gold Group in an amount no less than $13,072,687.23.

L.     As to Counts XLV through XLVIII, avoiding the T&L Transfer and awarding damages in favor of Debtor and against Brunner in an amount no less than $5,600,000.00.

M.     As to Counts XLIX through LII, avoiding the SGG Transfer and awarding damages in favor of Debtor and against Brunner in an amount no less than $ $13,072,687.23.

- 73 -

N.  As to Counts LIII through LVI, avoiding the Segal Transfer and awarding damages in favor of Debtor and against Segal in an amount no less than $300,000.

O.  As to Counts LVII through LX, avoiding the Janklowicz Transfer and awarding damages in favor of Debtor and against Janklowicz in an amount no less than $150,000.

P.  As to Counts LXI through LXIV, avoiding the M. Lowy Transfer and awarding damages in favor of Debtor and against M. Lowy in an amount no less than $666,666.66.

Q.  As to Counts LXV through LXVIII, avoiding the Kirschner Transfer and awarding damages in favor of Debtor and against Kirschner in an amount no less than $666,666.66.

R.  As to Counts LXIX through LXXII, avoiding the J. Lowy Transfer and awarding damages in favor of Debtor and against J. Lowy in an amount no less than $800,000.

S.  As to Counts LXXIII through LXXVI, avoiding the Greenfeld Transfer and awarding damages in favor of Debtor and against Greenfeld in an amount no less than $3,000,000.

T.  As to Counts LXXVII through LXXX, avoiding the Renatus/Herrick Transfer and awarding damages in favor of Debtor and against Renatus in an amount no less than $19,672,687.23.

U.  As to Count LXXXI, disallowing the claim of any Defendant, under 11 U.S.C. §502(d), as to any defendant that received a conveyance from the Net Down Payment under 11 U.S.C. §§544 and 548 until such funds are turned over to the

- 74 -

Debtor;

V.    On all Counts, awarding the Debtor prejudgment interest from the date the

transfers, or benefits of such transfers, were received by the defendants pursuant

to federal common law and NY CPLR 5001 and 5004.

W.    Costs, and attorneys' fees pursuant to NY Debtor & Creditor Law § 276-a.

X.    Such other and further relief as may seem to the Court just and proper.


Dated: New York, New York
       October 10, 2017

**WILK AUSLANDER LLP**

By: /s/ Eric J. Snyder_____
        Eric J. Snyder, Esq.
        Eloy A. Peral, Esq.
1515 Broadway, 43rd Floor
New York, NY 10036
(212) 981-2300

*Counsel for Plaintiff/Debtor*


**SILVERMAN SHIN & BYRNE PLLC**

By: /s/ Donald F. Schneider___
        Peter R. Silverman
        Donald F. Schneider
Wall Street Plaza
88 Pine Street, 22nd Floor
New York, New York 10005
(212) 779-8600

*Special Counsel for Plaintiff*

- 75 -

467613v2 (SSB)
00990191.2