# EXHIBIT C

**Fill in this information to identify the case:**

Debtor 1    45 John Lofts, LLC

Debtor 2    _____
(Spouse, if filing)

United States Bankruptcy Court for the:    Southern District of New York

Case number    16-12043-shl

## Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Fliers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

45 John NY LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor  _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Sher Tremonte LLP c/o Mark Cuccaro
Name

80 Broad Street, 13th Fl.
Number    Street

New York          NY        10004
City              State     ZIP Code

Contact phone   212-202-2600

Contact email   mcuccaro@shertremonte.com

**Where should payments to the creditor be sent? (if different)**

_____
Name

_____
Number    Street

_____
City              State     ZIP Code

Contact phone   _____

Contact email   _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

**Part 2:**   **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___ |

7. **How much is the claim?**   $ no less than _____500,000.00___   **Does this amount include interest or other charges?**

       ☑ No

       ☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

    Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

    Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

    Limit disclosing information that is entitled to privacy, such as health care information.

    Breach of contract for sale of real property (see attached for detail)

9. **Is all or part of the claim secured?**

    ☑ No

    ☐ Yes. The claim is secured by a lien on property.

    **Nature of property:**

    ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

    ☐ Motor vehicle

    ☐ Other. Describe: _____

    **Basis for perfection:** _____

    Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

    **Value of property:**   $_____

    **Amount of the claim that is secured:**   $_____

    **Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

    **Amount necessary to cure any default as of the date of the petition:**   $_____

    **Annual Interest Rate** (when case was filed) _____%

    ☐ Fixed

    ☐ Variable

10. **Is this claim based on a lease?**

    ☑ No

    ☐ Yes. Amount necessary to cure any default as of the date of the petition.   $_____

11. **Is this claim subject to a right of setoff?**

    ☑ No

    ☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

### Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   10/05/2016
                   MM / DD / YYYY

Signature

**Print the name of the person who is completing and signing this claim:**

| | | | |
|---|---|---|---|
| Name | Vladislav | | Tsirkin |
| | First name | Middle name | Last name |
| Title | Vice President | | |
| Company | 45 John NY LLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 150 Broadway, Suite 900 | | |
| | Number      Street | | |
| | New York | NY | 10038 |
| | City | State | ZIP Code |
| Contact phone | _____ | Email | _____ |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

45 John Lofts LLC,

                                        Debtor.

Case No. 16-12043 (SHL)

## SUPPLEMENTARY STATEMENT IN SUPPORT OF 45 JOHN NY LLC'S PROOF OF CLAIM

Creditor 45 John LLC ("45 John") submits the following supplementary statement in connection with its Proof of Claim.

### The AT&T Cell Tower

45 John, as buyer, and 45 John Lofts LLC (the "Debtor") and HS 45 John LLC ("HS 45 John"),[1] as sellers, entered into and closed on a Contract of Sale (attached as **Exhibit A**) for the sale and purchase of real property located at 45 John Street, New York, NY 10038 (the "Premises").

The Contract of Sale required the sale of the Premises to be "free and clear of all claims, liens, taxes, and encumbrances." Ex. A, § 2.1. The Contract of Sale included a representation and warranty from the sellers that the Premises were "currently vacant and no person or entity has any right or option to lease or acquire any portion thereof." Ex. A, § 7.1.3. The Contract of Sale also included a representation and warranty that the sellers had "not entered into any leases, licenses, or other agreements, or any service contracts or other contracts or agreements affecting any portion of the John Street Property." Ex. A, § 7.1.5. These contractual warranties and representations were inaccurate due to the undisclosed existence of a cell tower (the "Cell Tower") that AT&T maintains at the Premises pursuant to a lease with the Debtor.

Before the closing on the Premises, 45 John was provided a brief period of due diligence. While inspecting the Premises, 45 John found the Cell Tower at the Premises. 45 John asked HS 45 John about the Cell Tower, and HS 45 John responded that there was no lease for the Cell Tower. HS 45 John also advised the 45 John that the Cell Tower structure had been abandoned and that the physical Cell Tower would be removed. These representations were incorrect. To date, the Cell Tower has not been removed and AT&T maintains that it has an ongoing enforceable lease to maintain the Cell Tower at the premises.

---

[1] HS 45 John is the debtor in another related bankruptcy pending before this Court, Case No. 15-10368 (SHL).

Following the closing, HS 45 John filed a motion in its own bankruptcy proceeding to terminate or reject AT&T's Cell Tower lease; the Court denied this motion on June 27, 2016. At that time, the Court also ruled that the Premises were not sold "free and clear" of any rights of AT&T.

45 John is unable to utilize the Premises for its intended purpose due to the presence of the Cell Tower. 45 John had purchased the Premises with the aim of converting it to a residential rental building. However, the Cell Tower has interfered with these plans, because it is present on the personal balconies of residences as well as the common rooftop area of the building. Thus, the presence of the Cell Tower has and will continue to prevent 45 John from utilizing the Premises for its contemplated use. Furthermore, the Cell Tower has caused considerable damages to the Premises, including but not limited to damages to the parapet walls, damages in the form of growth of mold on the walls, and leakage in the walls of the Premises.

After the closing on the property, AT&T claimed that the damages to which it would be entitled if the cell tower is removed or relocated could be in excess of $500,000.

## Damages

The Debtor breached the Contract of Sale by failing to sell the Premises to 45 John "free and clear" of AT&T's leasehold interests relating to the Cell Tower. As a result of this breach, 45 John has not been able to use the Premises for its intended purpose. 45 John is entitled to damages corresponding to the costs of removing the Cell Tower, which AT&T has represented could be in excess of $500,000.

Accordingly, 45 John has a claim against the Debtor of no less than $500,000 relating to the Cell Tower.

# EXHIBIT A

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT is made as of October 19, 2015 by and between HS 45 John LLC the ("Debtor"), a New York Limited Liability Company and having an address c/o Orin Management, 37-04 Parsons Boulevard, Flushing, NY 11354 and 45 John Lofts LLC ("45 John Lofts") a New York Limited Liability Company having an address c/o Peter R. Silverman, Esq., Silverman Shin Byrne & Gilchrest PLLC, 381 Park Avenue South, 16th Floor, New York, New York 10016 (Debtor and 45 John Lofts collectively, the "Seller") and 45 JOHN NY LLC, a Delaware limited liability company, having an address at 150 Broadway, Suite 900, New York, New York 10038 ("Purchaser"). Seller and Purchaser together shall hereinafter be the "Parties."

## W I T N E S S E T H :

**WHEREAS,** the Debtor is a debtor in possession in a Chapter 11 bankruptcy case entitled *In re HS 45 John, LLC*, Case No. 15-10368 (SHL) (the "Bankruptcy Case") currently pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"); and

**WHEREAS,** the Debtor is under contract to purchase the real property at 45-49 John Street, New York, New York (the "John Street Property") pursuant to Asset Purchase Agreement, dated September 19, 2014 (the "Debtor Contract"); and

**WHEREAS,** the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on February 20, 2015 as a vendee in possession of the John Street Property; and

**WHEREAS,** the Debtor has entered into a global settlement agreement (the "Bankruptcy Court Settlement") with 45 John Lofts and others to pursue a sale of the John Street Property in bankruptcy based upon an assumption of the Debtor's Contract and an simultaneous assignment

thereof to the Purchaser, as amended, modified and superseded by this Asset Purchase Agreement ("APA"); and

**WHEREAS**, in furtherance of the Bankruptcy Court Settlement, Seller desires to sell to Purchaser, and Purchaser desires to purchase from Seller, the John Street Property, upon the terms and subject to the conditions set forth herein, and pursuant to a certain plan of reorganization to be filed by the Debtor and confirmed by the Bankruptcy Court and sections 105(a), 1123, 1129, 1141 and 1146 of the Bankruptcy Code, and free and clear of all Liens and Encumbrances (as hereafter defined), except as specifically provided in Section 2.4 hereof;

**NOW, THEREFORE**, for and in consideration of the mutual promises, covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Purchaser hereby agree as follows:

## DEFINITIONS

"**Auction**" has the meaning set forth in Section 13.1.

"**Bankruptcy Case**" has the meaning set forth in the WHEREAS clauses.

"**Bankruptcy Court**" has the meaning set forth in the WHEREAS clauses.

"**Break-up Fee**" has the meaning set forth in Section 13.2.

"**Broker**" has the meaning set forth in Section 12.

"**Building**" has the meaning set forth in Section 1.1(a).

"**Business Day**" means any day other than a Saturday, Sunday or a holiday on which the New York Stock Exchange is closed.

"**Casualty Election Date**" has the meaning set forth in Section 11.4.

"**Closing**" has the meaning set forth in Section 4.1.

"**Closing Date**" has the meaning set forth in Section 4.1.

"**Code**" has the meaning set forth in Section 7.1.2.

"**Confirmation Order**" has the meaning set forth in Section 4.1.

"**Current Tax Year**" has the meaning set forth in Section 6.1.1.

"**Deed**" has the meaning set forth in Section 8.1.1.

"**Deposit**" has the meaning set forth in Section 3.2.1.

"**Deposit Return**" has the meaning set forth in Section 10.2.

"**Environmental Laws**" has the meaning set forth in Section 5.3.

"**Escrow Agent**" has the meaning set forth in Section 3.2.1.

"**Equalization Form**" has the meaning set forth in Section 8.1.4.

"**Excluded Assets**" has the meaning set forth in Section 1.2.

"**Facts**" has the meaning set forth in Section 2.1.4.

"**Hazardous Materials**" has the meaning set forth in Section 5.3.

"**Improvements**" has the meaning set forth in Section 1.1(a).

"**John Street Property**" has the meaning set forth in the Whereas Clauses.

"**Land**" has the meaning set forth in Section 1.1(a).

"**Laws and Regulations**" has the meaning set forth in Section 2.1.2.

"**Liens and Encumbrances**" means other than any Permitted Exceptions, any mortgage, deed of trust, deed to service debt, pledge, security interest, lien, charge, lease, claim, encumbrance, notice of pendency, option, right of first refusal, covenants and encroachments, easements, proxy, voting trust or agreement, transfer restriction under any shareholder or similar agreement, or state of facts.

3

"**Notices**" has the meaning set forth in Section 16.

"**OFAC**" has the meaning ascribed to it in Section 7.1.10.

"**Parties**" has the meaning set forth in the introductory paragraph hereto.

"**PCBs**" has the meaning set forth in Section 5.3.

"**Permitted Exceptions**" has the meaning set forth in Section 2.1.

"**Procedures Motion**" has the meaning set forth in Section 13.1.

"**Purchase Price**" has the meaning set forth in Section 3.1.

"**Purchaser**" has the meaning set forth in the introductory paragraph hereto.

"**Purchaser Default**" has the meaning set forth in Section 10.1.

"**Purchaser Related Party**" has the meaning set forth in Section 5.4.

"**Rights**" has the meaning set forth in Section 2.1.3.

"**Seller**" has the meaning set forth in the introductory paragraph hereto.

"**Taking**" has the meaning set forth in Section 11.5.

"**Title Company**" has the meaning set forth in Section 2.2.

"**Title Report**" has the meaning set forth in Section 2.2.

"**Title Report Objection Notice**" has the meaning set forth in Section 2.2.

"**Transfer Tax Returns**" has the meaning set forth in Section 8.1.4.

"**Violations**" has the meaning set forth in Section 2.1.5.

1.    <u>Agreement to Sell and Purchase; Description of John Street Property.</u>

1.1    The Debtor Contract is hereby deemed assumed upon approval of this APA as the Stalking-Horse Contract, and simultaneously therewith shall be deemed amended, modified and superseded by this APA in its entirety, to provide that Purchaser, as the Seller's designated assignee, shall have the right to purchase and acquire the John Street Property upon the terms and conditions hereinafter contained, specifically:

(a)    All of those condominium units located at that certain property known as 45 John Street Condominium, the condominium created under that certain Declaration recorded on July 10, 2008 at CRFN #2008000273773 (the "Condominium Plan") against that certain land in the City of New York and the building and improvements thereon, located at 45 John Street, New York, New York (Block 78, Lots 1701-1787) as more particularly bounded and described in **Exhibit A** attached hereto and hereby made a part hereof (the "<u>Land</u>") together with (i) the common interests appurtenant to said condominium units, (ii) the land lying in the bed of any street, highway, road or avenue, opened or proposed, public or private, in front of or adjoining the Land, to the center line thereof, (iii) all existing partially constructed buildings or structures (the "<u>Building</u>") and any and all other fixtures and improvements erected thereon (collectively, the "<u>Improvements</u>"); (iv) rights of way, appendages, appurtenances, easements, sidewalks, alleys, gores or strips of land adjoining or appurtenant to the Land or any portion thereof and used in conjunction therewith, (v) any air, zoning, or other development rights appurtenant to the Land or any portion thereof (without representation of the extent, scope or existence of such development rights) and

5

(vi) any award or payment made or to be made in lieu of any of the foregoing or any portion thereof and any unpaid award for damage to the Land, the Building or any of the Improvements by reason of change of grade or closing of any street, road or avenue, it being understood and agreed that Seller will execute and deliver to Purchaser on the Closing Date (as hereinafter defined) or thereafter, which obligation shall survive the Closing (as hereinafter defined), upon reasonable written request, all proper instruments for the conveyance of such right, title and interest and for the assignment and collection of any such awards or payments, without representation or warranty by or recourse to Seller (other than a representation and warranty that Seller has not conveyed same, or any interest therein, to any other person or entity);

(b)     all fixtures, machinery, trailers, tools, tangible personal property and equipment, if any, owned by Seller and located at the John Street Property or used in connection with or attached or appurtenant to or at or upon all or any portion of the Land, the Building and the Improvements at the date hereof, including, without limitation, such fire protection, heating, plumbing, electrical and air conditioning systems, if any, as they now exist without representation or warranty of any kind or nature, whether express, implied or statutory;

(c)     copies of available books, records, files and other documents relating to the Land, Building or Improvements, including, without limitation, any surveys, building plans or specifications;

(d)     to the extent transferrable pursuant to applicable law, any licenses, certificates, permits, authorizations or approvals relating to the Land, Building or

6

Improvements or the operation of thereof issued by any governmental authority;
and

(e)      to the extent transferrable pursuant to applicable law and without
cost to Purchaser, any other available documents, reports, studies and other
intangible personal property used in connection with or related in any way to the
Land, Building or Improvements and/or the construction of Improvements on the
Land, including without limitation, any plans, specifications, warranties, permits,
licenses and warranties relating thereto, utility reservations or allocations and any
other trademark right, other intangible property right, warranties or guaranties
relating to fixtures and equipment in the Building, if any, or of any equipment or
system constituting a part of the Building or Improvements, if any.

1.2      Excluded Assets/Excluded Liabilities.

(i)      Excluded Assets. The following assets of the Seller are not being sold to
the Purchaser (collectively, the "Excluded Assets"):

(a)      cash and all existing cash reserves;

(b)      accounts receivable;

(c)      the Purchase Price and all rights of the Seller under this APA;

(d)      any claim, right or interest of Seller, if any, in or to any pending
refund, rebate, abatement or other recovery for taxes; and

(e)      any claims, defenses, offsets, counter-claims or causes of action
the Seller has or may have against any third party relating to (i) the Debtor's
contract involving the John Street Property; or (ii) disposition of the deposit under
the Debtor's Contract.

7

(ii)    Excluded Liabilities. The Purchaser shall not assume or be deemed to have assumed any liabilities of the Seller.  Purchaser shall have no liability for any existing indebtedness of the Seller, any federal, state, or local tax liabilities, any fines or penalties assessed against the Seller or its property (including the John Street Property), or any employee-related liabilities of the Seller.

2.    Exceptions to Title; Title Matters.

2.1    The John Street Property is sold and shall be conveyed free and clear of all claims, liens, taxes and encumbrances of any kind or nature whatsoever, to the fullest extent permitted under 11 U.S.C. § 363 (b) and (f), subject to the following (the "Permitted Exceptions"):

2.1.1    All presently existing and future liens for unpaid real estate taxes and water and sewer charges not due and payable as of the date of the Closing (as hereinafter defined), subject to adjustment as herein below provided.

2.1.2    All present and future zoning, building, environmental and  other laws, ordinances, codes, restrictions and regulations of all governmental authorities having jurisdiction with respect to the John Street Property (collectively, "Laws and Regulations").

2.1.3    All    covenants,    declarations,    conditions,    reservations, encroachments, restrictions and rights of record and all easements and other agreements of record, to the extent same relate to the erection and/or maintenance of water, gas, steam, electric, telephone, sewer or other utility pipelines, poles, wires, conduits or other like facilities, and appurtenances thereto, over, across and under the John Street Property and to the extent same are not violated by the Building or the Improvements or the contemplated use thereof (collectively, "Rights").

8

2.1.3(A)     Any covenants, conditions, agreements, reservations, encroachments, easements and rights of way (whether or not of record) provided that same do not prevent the current or contemplated use of the present structures (including commercial and residential at the John Street Property) and further provided same do not render title unmarketable and further that same are not violated by the Building or the Improvements.

2.1.4   Any state of facts which would be shown on or by an accurate current survey of the John Street Property including without limitation the facts shown on or by the survey dated February 20, 2014, made by T. Eason Land Surveyor, to the extent same do not render title unmarketable (collectively, "Facts").

2.1.5   All violations of building, fire, sanitary, environmental, housing and similar Laws and Regulations whether or not noted or issued at the date hereof or at the Closing Date (collectively, "Violations"); *provided, however*, that Seller shall pay or caused to be paid at Closing all actual monetary fines assessed by the City of New York and its agencies against the Property as of the Closing Date for the Violations of record not to exceed the higher of $50,000 or the allowed amount of any claims filed by the City of New York in the Bankruptcy Case relating to violations. The Purchaser shall be responsible and take subject to all of the underlying conditions giving rise to any violations and Seller shall not be responsible to remedy any such underlying conditions.

2.1.6   Possible encroachments and/or projections of stoop areas, roof cornices, window trims, vent pipes, cellar doors, steps, columns and column bases, flue pipes, signs, piers, lintels, window sills, fire escapes, satellite dishes, protective netting, sidewalk sheds, ledges, fences, coping walls (including retaining walls and yard walls), air conditioners and the like, if any, on, under or above any street or highway, the John Street Property or any

9

adjoining property, provided same do not render title unmarketable or diminish, interfere with or alter the intended use, operation and completion of the John Street Property, and further provided the Title Company (as hereinafter defined) will insure that the Building may remain as presently located.

      2.1.7   Variations between tax lot lines and lines of record title, provided same do not render title unmarketable.

      2.1.8   The standard conditions and exceptions to title contained in the form of title policy or "marked-up" title commitment issued to Purchaser by the Title Company.

      2.1.9   Any other matter which the Title Company may raise as an exception to title, provided the Title Company will insure against collection or enforcement of same out of the Property without imposition of material additional premiums.

      2.1.10 A certificate or certificates of occupancy, or no certificate or certificates of occupancy (or, if there be such certificate(s), that there exists any variances between such certificate(s) and the actual state or use(s) of the John Street Property).

      2.2      Purchaser agrees promptly upon the approval of this APA by the Bankruptcy Court, at Purchaser's sole cost and expense, to cause title to the Property to be examined by any reputable title insurer licensed to issue title insurance in the State of New York (the "Title Company") and shall direct the Title Company to deliver copies of such title report (the "Title Report") to Seller's attorney simultaneously with the delivery of same to Purchaser (which delivery may be made by email transmission). Delivery of the Title Report to Seller's attorney shall constitute Purchaser's objection of those matters referenced in the Title Report which are not Permitted Exceptions hereunder. If Seller or its attorney subsequently receives continuation reports or other written evidence indicating any title defect(s) which are not covered

10

by Section 2.1 hereof and "subject to" which Purchaser is not required to accept title, receipt of

such continuation reports or other written evidence of such title defects by Seller's attorneys

shall constitute notice of objection to such title defects as if same were set forth in the original

Title Report.

      2.3     If, on the Closing Date, Seller is unable to convey to Purchaser title to the

John Street Property subject to and in accordance with the provisions of this APA and pursuant

to a confirmed plan of reorganization in bankruptcy (the "Plan"), Seller shall be entitled, upon

written notice delivered to Purchaser on or prior to the Closing Date, to reasonable adjournments

of the Closing after the Plan is confirmed; provided that (i) such adjournments do not exceed

sixty (60) days in the aggregate, (ii) such date is no later than the last business day prior to the

date on which Purchaser's proposed term sheet or commitment, as the case may be, concerning

any contemplated financing expires and (iii) notwithstanding anything to the contrary in this

Agreement, Purchaser shall not be required to pay or adjust in favor of Seller any amount that

would otherwise have been apportioned to Purchaser to pay or adjust in favor of Seller under this

Agreement for the period from the date Seller delivers such notice to the actual Closing Date.  If

Seller does not so elect to adjourn the Closing following confirmation of the Plan, or if at the

adjourned date Seller is unable to convey title subject to and in accordance with the provisions of

this APA and Plan, Purchaser may (A) terminate this APA by written notice to Seller and

Escrow Agent, in which event Escrow Agent shall repay to Purchaser the Deposit, together with

any interest earned thereon, subject to Section 23, and this APA shall thereupon be deemed

canceled and become void and of no further effect, and neither party hereto shall have any

obligations of any nature to the other hereunder or by reason hereof, except for those provisions

which are intended to survive such termination, or (B) complete the purchase in accordance with

Section 2.4. Seller shall not be required to take or bring any additional action or proceeding to remove any defect in or objection to title or to expend any moneys therefor nor shall Purchaser have any right of action against Seller therefor, at law or in equity, except that Seller shall, on or prior to the Closing, pay, discharge or remove of record or cause to be paid, discharged or removed of record at Seller's sole cost and expense all of the Liens and Encumbrances. Notwithstanding the foregoing, Seller shall take steps to reasonably address all objections raised by the Title Company as part of the process to confirm the Plan or otherwise pursuant to separate order of the Bankruptcy Court as applicable.

2.4     Notwithstanding anything in Section 2.3 above to the contrary, Purchaser may at any time accept such title as Seller can convey, without reduction of the Purchase Price or any credit or allowance on account thereof or any claim against Seller. The acceptance of the Deed by Purchaser shall be deemed to be full performance of, and discharge of, every agreement and obligation on Seller's part to be performed under this APA except for such items as are specifically set forth to survive the Closing pursuant to the terms of this APA. If the parties mutually elect to further adjourn the Closing as provided in Section 2.3, this APA shall remain in effect for the period or periods of adjournment, in accordance with its terms.

2.5     The amount of any unpaid taxes, assessments and water and sewer charges which Seller is obligated to pay and discharge, with interest and penalties, may at the option of Seller be paid by Purchaser out of the balance of the Purchase Price, if official bills therefore with interest and penalties thereon figured to said date are furnished to or obtained by the Title Company at the Closing for payment thereof, and Purchaser shall receive a credit for such payment.   To the extent required by any Bankruptcy Court order, any taxes and violations being

challenged by the Seller at the time of Closing shall remain in escrow with the Escrow Agent in lieu of payment at Closing.

2.6     If the John Street Property shall, at the time of the Closing, be subject to any Liens and Encumbrances which would be grounds for Purchaser to reject title hereunder, the same shall not be deemed an objection to title provided that, at the time of the Closing, the Confirmation Order or the Sale Order shall provide that said Liens and Encumbrances shall attach to the proceeds of sale to the extent and priority as allowed and fixed by Order of the Bankruptcy Court, and that such Liens and Encumbrances shall not encumber the John Street Property or any portion thereof.

3.     Purchase Price and Payment

3.1     The purchase price payable to Seller for the John Street Property is $73,000,000 (U.S.) (the "Purchase Price"), subject to such apportionments, adjustments and credits as are provided below.

3.2     The Purchase Price shall be payable as follows:

3.2.1     $7,000,000 (the "Deposit") upon execution of this APA being fully executed by the Parties. The Deposit shall be provided by wire transfer or bank check, and deposited with Goldberg Weprin Finkel Goldstein LLP as escrow agent (the "Escrow Agent") to be held by Escrow Agent in an interest bearing account. The Deposit shall be held by Escrow Agent and disbursed in accordance with the terms and conditions of this APA. Any interest earned on the Deposit shall be deemed to be part of the Deposit and shall be paid together with the principal portion of the Deposit to whichever party is entitled thereto, it being understood and agreed that in the event of a Closing between Seller and Purchaser, any interest earned on the

Deposit shall not be credited to the Purchase Price upon the Closing and shall remain the property of Seller.

      3.2.2   Disbursement of Deposit.   Upon the written instruction of the Purchaser, the Deposit (including interest) shall be returned to the Purchaser in the event (a) an Order approving the bidding procedures, in a form reasonably acceptable to the Purchaser, is not entered by the Bankruptcy Court on or before November 6, 2015 or (b) the Auction is not completed on or before November 20, 2015.   Additionally, upon the written instruction of the Purchaser, the Deposit (including interest) shall be returned to the Purchaser in the event the Bankruptcy Court enters an order approving the sale of the John Street Property to any party other than the Purchaser.   But for the circumstances described in this subsection or Sections 2.3 or 10.2, the Deposit shall be released in accordance with and upon joint written instruction of the Purchaser and the Seller, or upon order of the Bankruptcy Court.   For the avoidance of doubt, upon occurrence of the Closing, the Deposit shall be released to Seller pursuant to the Confirmation Order.

      3.2.3   $66,000,000 (U.S.) shall be paid to Seller's counsel (as representative of the Seller's bankruptcy estate) on the date of the Closing, provided that all of the conditions to Closing are satisfied or waived by the party having the right to so waive, subject to the apportionments, adjustments and credits referenced herein, simultaneously with the delivery of the Deed, by federal funds wire transfer of immediately available funds to an account at such bank or banks as shall be designated by notice to Purchaser at least one (1) Business Day prior to the Closing Date.

      3.3   Purchaser expressly agrees and acknowledges that Purchaser's obligations to close hereunder are not in any way conditioned upon or qualified by Purchaser's ability to

obtain financing of any type or nature whatsoever (i.e., whether by way of debt financing or equity investment, or otherwise). Additionally, Purchaser expressly agrees and acknowledges that it has already conducted full and complete due diligence relating to the John Street Property and Purchaser is fully aware of all legal and regulatory matters affecting the John Street Property and does not require any further due diligence, environment or engineering study, all of which is deemed satisfied and fully completed. To the extent Purchaser separately elects to seek financing, Seller will cooperate with any potential lender as reasonable under the circumstances, without creating any liability hereunder or contingencies. Additionally, Seller shall reasonably endeavor to cause the holder(s) of the existing mortgage(s) on the John Street Property to execute and deliver to Purchaser's lender assignment(s), without recourse or representation, express or implied, of such mortgage(s) in recordable form, including, if necessary, requesting that Bankruptcy Court direct such assignment(s) be delivered as a condition to Closing.

4.      Closing.

4.1      The closing of the transaction contemplated hereby (the "Closing" or "Closing Date") shall occur at 10:00 A.M. on December 30, 2015 so long as an Order of the Bankruptcy Court confirming the Seller's Plan and approving this transaction has been entered (the "Confirmation Order") and the Purchaser is deemed a good faith purchaser within the meaning of 11 U.S.C. §363(m). The Purchaser shall be entitled to an extension option to close through and including January 20, 2016 (time of the essence) regardless of the Closing Date. All adjustments for the closing shall be made as of December 1, 2015. Accordingly, Purchaser shall be responsible to pay all interest on the mortgages, real property taxes, water and sewer charges, costs of insurance and utilities as of December 1, 2015 through the Closing Date with such

15

payments to be paid either directly to the Seller at the Closing, or as an adjustment in favor of the Seller. The Closing Date shall not occur prior to entry of the Confirmation Order to preserve the Debtor's Section 1146(a) transfer tax exemption.

4.2    The Closing shall occur at the offices of Seller's attorney Goldberg Weprin Finkel Goldstein, LLP, 1501 Broadway, 22nd Floor, New York, NY 10036 or at the offices of Purchaser's lender (or Purchaser's lender's counsel) or such other place as the Parties mutually agree and designate.

5.    "AS IS".

5.1.    The Purchaser is expressly purchasing the John Street Property in its existing condition "AS IS, WHERE IS, AND WITH ALL FAULTS" with respect to all facts, circumstances, zoning, condominium plan and regulatory issues, conditions and defects, but without any tenants and otherwise vacant. Seller has no obligation to determine or correct any such facts, circumstances, conditions or defects or to compensate Purchaser for same. Seller has specifically bargained for the assumption by Purchaser of all responsibility to investigate the John Street Property, Laws and Regulations, Rights, Facts and Violations affecting the same, for which the Seller makes no representations or warranty. Purchaser has undertaken all such investigations and review of the John Street Property, Laws and Regulations, Rights, Facts and Violations as Purchaser deems necessary or appropriate under the circumstances as to the status of the John Street Property, and based upon same, Purchaser is and will be relying strictly and solely upon such inspections and examinations and the advice and counsel of its own consultants, agents, legal counsel and officers and Purchaser is and will be fully satisfied that the Purchase Price is fair and adequate consideration for the John Street Property and, by reason of all the foregoing, Purchaser assumes the full risk of any loss or damage (subject to Section 11

below) occasioned by any fact, circumstance, condition or defect pertaining to the John Street

Property.

     5.2    Other than as expressly set forth herein, Purchaser hereby disclaims all

warranties of any kind or nature whatsoever (including warranties of habitability and fitness for

particular purposes), whether expressed or implied, including, without limitation, warranties with

respect to the John Street Property and the status and effectiveness of the Condominium Plan.

Purchaser acknowledges that it is not relying upon any representation of any kind or nature made

by Seller with respect to the John Street Property, and the status and effectiveness of the

Condominium Plan, and that, in fact, no such representations were made.

     5.3    Seller makes no representation or warranty with respect to the presence of

Hazardous Materials (as hereinafter defined) on, above or beneath the Land (or any parcel in

proximity thereto) or in any water on or under the John Street Property. Purchaser's closing

hereunder shall be deemed to constitute an express waiver of Purchaser's right to cause Seller to

be joined in any action brought under any Environmental Laws (as hereinafter defined). The

term "Hazardous Materials" shall mean: (a) those substances included within the definitions of

any one or more of the terms "hazardous materials," "hazardous wastes," "hazardous

substances," "industrial wastes" and "toxic pollutants," as such terms are defined under the

Environmental Laws, or any of them, (b) petroleum and petroleum products, including, without

limitation, crude oil and any fractions thereof, (c) natural gas, synthetic gas and any mixtures

thereof, (d) asbestos and or any material which contains any hydrated mineral silicate, including,

without limitation, chrysotile, amosite, crocidolite, tremolite, anthophylite and/or actinolite,

whether friable or non-friable, (e) polychlorinated biphenyl ("PCBs") or PCB-containing

materials or fluids, (f) radon, (g) any other hazardous or radioactive substance, material,

pollutant, contaminant or waste, and (h) any other substance with respect to which any Environmental Law or governmental authority requires environmental investigation, monitoring or remediation. The term "Environmental Laws" shall mean all federal, state and local laws, statutes, ordinances and regulations, now or hereafter in effect, in each case as amended or supplemented from time to time relating to Hazardous Materials, including, without limitation, all applicable judicial or administrative orders, applicable consent decrees and binding judgments relating to the regulation and protection of human health, safety, the environment and natural resources (including, without limitation, ambient air, surface, water, groundwater, wetlands, land surface or subsurface strata, wildlife, aquatic species and vegetation), including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended (42 U.S.C. §§ 9601 et seq.), the Hazardous Material Transportation Act, as amended (49 U.S.C. §§ 1801 et seq.), the Federal Insecticide, Fungicide, and Rodenticide Act, as amended (7 U.S.C. §§ 136 et seq.), the Resource Conservation and Recovery Act, as amended (42 U.S.C. §§ 6901 et seq.), the Toxic Substance Control Act, as amended (15 U.S.C. §§ 2601 et seq.), the Clean Air Act, as amended (42 U.S.C. §§ 7401 et seq.), the Federal Water Pollution Control Act, as amended (33 U.S.C. §§ 1251 et seq.), the Safe Drinking Water Act, as amended (42 U.S.C. §§ 300f et seq.), any state or local counterpart or equivalent of any of the foregoing, and all state and federal common law, and any federal, state or local transfer of ownership notification or approval statutes.

5.4    Purchaser shall rely solely upon Purchaser's own knowledge of the John Street Property based on its investigation of the John Street Property and its own inspection of the John Street Property in determining the John Street Property's physical condition. Purchaser releases Seller and its respective successors and assigns from and against any and all claims

which Purchaser or any affiliate of Purchaser (each, a "Purchaser Related Party") has or may have arising from or related to any matter or thing related to or in connection with the John Street Property (other than matters expressly addressed herein or in any of the documents delivered at the Closing), including the documents and information referred to herein, any construction defects, errors or omissions in the design or construction and any environmental conditions, and neither Purchaser nor any Purchaser Related Party shall look to Seller or its respective successors and assigns in connection with the foregoing for any redress or relief. This release shall be given full force and effect according to each of its express terms and provisions, including those relating to unknown and unsuspected claims, damages and causes of action. The provisions of this Section 5.4 shall survive the termination of this APA or the Closing Date and shall not be deemed to have merged into any of the documents executed or delivered at the Closing. To the extent required to be operative, the disclaimers and warranties contained herein are "conspicuous" disclaimers for purposes of any applicable law, rule, regulation or order.

6.    Apportionments.

6.1    The following items shall be apportioned between the Parties as of December 1, 2015 regardless of the Closing Date. Any errors in the apportionments pursuant to this Section 6 shall be corrected by appropriate re-adjustment between Seller and Purchaser post-closing, provided that notice of any such error, with supporting calculations, shall be given by Purchaser to Seller or by Seller to Purchaser, as the case may be, no later than ninety (90) days after the Closing, if ascertainable within such period, it being understood and agreed that if any such items or errors are not ascertainable at the Closing or within ninety (90) days thereafter, the apportionment shall be made subsequent to the Closing when the charge or error is determined. Except as otherwise specifically provided for herein, all apportionments shall be made in the

19

manner recommended by the Customs in Respect to Title Closings of the Real Estate Board of

New York, Inc., and there shall be no other apportionments. The items to be apportioned are:

6.1.1    Real estate taxes, unmetered water and sewer charges and vault

charges, if any, and any and all other municipal or governmental assessments of any and every

nature levied or imposed upon the John Street Property in respect of the current fiscal year of the

applicable taxing authority in which the Closing Date occurs (the "Current Tax Year") on a per

diem basis based upon the number of days in the Current Tax Year prior to the Closing Date

(which shall be allocated to Seller) and the number of days in the Current Tax Year on and after

the Closing Date (which shall be allocated to Purchaser). If the Closing shall occur before the tax

rate for the Current Tax Year is fixed, the apportionment of real estate taxes shall be upon the

basis of the tax rate for the next preceding fiscal period applied to the latest assessed valuation.

Promptly after the new tax rate is fixed for the fiscal period in which the Closing takes place, the

apportionment of real estate taxes shall be recomputed. Upon the Closing Date and subject to the

adjustment provided above, Purchaser shall be responsible for real estate taxes and assessments

levied or imposed upon the John Street Property payable in respect of the Current Tax Year

following the Closing Date and all periods after the Closing Date.  In no event shall Seller be

charged with or be responsible for any increase in the real estate taxes or assessments levied or

imposed upon the Property resulting from the transfer of the John Street Property herein

contemplated or from any improvements made at any time or for any reason.

6.2    If there are water meters on the John Street Property, Seller shall endeavor

to furnish readings to a date not more than five (5) business days prior to the Closing Date, and

the unfixed meter charges and the unfixed sewer rents, if any, based thereon for the intervening

time shall be apportioned on the basis of such last readings. If Seller fails or is unable to obtain

such readings, the Closing shall nevertheless proceed and the parties shall apportion the meter charges and sewer rents on the basis of the last readings and bills received by Seller and the same shall be appropriately readjusted after the Closing on the basis of the next subsequent bills.

6.3     Seller shall not be required to assign any policies of insurance in respect of the John Street Property to Purchaser and Purchaser shall be responsible for obtaining its own insurance as of the Closing Date. Seller and Purchaser shall take all necessary actions required to transfer all utility accounts to Purchaser as of the Closing Date.

6.4     In addition to the foregoing, Purchaser shall be responsible to pay for and apportion as a credit in favor of the Seller all (i) interest to be paid on the outstanding mortgages at the rate of \$3,333 per day for the period December 1, 2015 to December 31, 2015 and regular non-default interest on the outstanding mortgages for the period January 1, 2016 to January 20, 2016 to the extent Purchaser exercises its 20 day option to close no later than January 20, 2016, time of the essence; (ii) the costs of insurance and utilities relating to the John Street Property for the period December 15, 2015 to the actual Closing Date.

6.5     The provisions of this Section 6 shall survive the Closing; provided, however, that any re-proportions or re-apportionments shall be made as and when required under Section 6.1 above. Any corrected adjustment or proration shall be paid in by federal funds wire transfer of immediately available funds to an account at such bank or banks as shall be designated by the party entitled thereto, or by bank check(s) issued to the party entitled thereto.

7.     Representations and Warranties of the Parties; Certain Covenants.

7.1     Seller warrants, represents and covenants to and with Purchaser that each of the following is true and correct on the date hereof and on the date of the Closing:

7.1.1    Subject to Bankruptcy Court approval of this APA, the Seller has the requisite power and authority to enter into and to perform the terms of this APA. The execution and delivery of this APA has been authorized by the Bankruptcy Court and the consummation of the transactions contemplated hereby will have been authorized by all requisite action of the Bankruptcy Court prior to the Closing. This APA constitutes, and each document and instrument contemplated hereby to be executed and delivered by Seller, when executed and delivered following Bankruptcy Court approval hereof, shall constitute the legal, valid and binding obligation of Seller enforceable against Seller in accordance with its terms. Neither the execution, delivery and performance of this APA nor the consummation of the transactions contemplated hereby is prohibited by, or requires Seller to obtain any consent, authorization, approval or registration under any law, statute, rule, regulation, judgment, order, writ, injunction or decree which is binding upon Seller, other than approval from the Bankruptcy Court.

7.1.2    Seller is not a "foreign person" within the meaning of Section 1445 of the Internal Revenue Code 1986, as amended, or any regulations promulgated thereunder (collectively, the "Code").

7.1.3    The John Street Property is currently vacant and no person or entity has any right or option to lease or acquire any portion thereof.

7.1.4    Seller has not received any written notice of any pending or threatened condemnation or eminent domain proceedings that would affect the John Street Property.

7.1.5    Seller has not entered into any leases, licenses or other occupancy agreements, or any service contracts or other contracts or agreements affecting any portion of the John Street Property.

22

7.1.8    Seller has not received any written notice from a governmental authority regarding the presence of Hazardous Materials at the John Street Property.

7.1.9    Seller is not, and will not become, a person or entity with whom United States persons or entities are restricted or prohibited from doing business under regulations of the Office of Foreign Asset Control ("OFAC") of the Department of the Treasury (including those named on OFAC's specially designated and blocked persons list) or under any statute, executive order (including the September 24, 2001, Executive Order Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism), or other governmental action and is not and will not engage in any dealings or transactions or be otherwise associated with such persons or entities.

7.1.10    Seller has not received written notice of the commencement of any pending proceedings for the reduction of the assessed valuation of the John Street Property.

7.1.11    There are no service contracts or union agreements relating to or affecting the John Street Property.

7.1.11    No person or entity is employed in connection with the John Street Property.

The representations contained herein shall survive the Closing.    7.2

Purchaser warrants, represents and covenants to and with Seller that each of the following is true and correct true and correct on the date hereof and on the date of the Closing:

7.2.1    Purchaser is or shall be duly organized or formed and in good standing under the laws of the state of its organization or formation and will have the requisite power and authority to enter into and to perform the terms of this APA.  Purchaser is not subject to any law, order, decree, restriction, or agreement which prohibits or would be violated by this

23

APA or the consummation of the transactions contemplated hereby. The execution and delivery of this APA and the consummation of the transactions contemplated hereby have been duly authorized by all requisite action of Purchaser. This APA constitutes, and each document and instrument contemplated hereby to be executed and delivered by Purchaser, when executed and delivered, shall constitute the legal, valid and binding obligation of Purchaser enforceable against Purchaser in accordance with its respective terms.

7.2.2 Neither the execution, delivery and performance of this APA nor the consummation of the transactions contemplated hereby is prohibited by, or requires Purchaser to obtain any consent, authorization, approval or registration under any law, statute, rule, regulation, judgment, order, writ, injunction or decree which is binding upon Purchaser.

7.2.3 There are no judgments, orders, or decrees of any kind against Purchaser unpaid or unsatisfied of record, nor any actions, suits or other legal or administrative proceedings pending or, to the best of Purchaser's actual knowledge, threatened against Purchaser, which would affect the ability of Purchaser to consummate the transactions contemplated by this APA.

7.2.4 To the best of Purchaser's knowledge, Purchaser shall qualify as a good faith purchaser under 11 U.S.C. § 363(m).

7.2.5 Purchaser is not, and will not become, a person or entity with whom United States' persons or entities are restricted or prohibited from doing business under regulations of OFAC (including those named on OFAC's specially designated and blocked persons list) or under any statute, executive order (including the September 24, 2001, Executive Order Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to

Commit, or Support Terrorism), or other governmental action and is not and will not engage in any dealings or transactions or be otherwise associated with such persons or entities.

      7.2.6   Purchaser shall take no action to improperly hinder the Title Company's decision to insure title to the John Street Property pursuant to an ALTA Owner's Policy of Title Insurance in the amount of the Purchase Price at regular rates and without additional premium (but nothing contained herein shall prohibit Purchaser from purchasing endorsements to said title policy), subject only to the Permitted Exceptions and as otherwise provided in this APA.

      7.3   Purchaser agrees and acknowledges that, except as specifically set forth in this APA, neither the Seller nor any agent, nor any purported agent or other representative of Seller have made, and the Seller is not liable for or bound in any manner by, any express or implied warranties, guaranties, promises, statements, inducements, representations or information pertaining to the John Street Property or any part thereof. Without limiting the generality of the foregoing, Purchaser has not relied on any representations or warranties, and Seller has not made any representations or warranties other than as expressly set forth herein, in either case express or implied, as to (a) the existing or future real estate tax liabilities, assessments or valuations of the John Street Property, (b) the potential qualification of the John Street Property for any and all benefits conferred by Federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated, (c) the compliance of the John Street Property, in its current or any future state, with applicable zoning ordinances and the ability to obtain a change in the zoning or a variance with respect to the John Street Property's non-compliance, if any, with said zoning ordinances, (d) the availability of any financing for the development, alteration,

rehabilitation or operation of the John Street Property from any source, (e) the current or future

use of the John Street Property, (f) the present and future condition and operating state of any

machinery or equipment on the John Street Property and the present or future structural and

physical condition of any part of the building structure or its suitability for rehabilitation or

renovation, (g) intentionally omitted, (h) the presence or absence of any Laws and Regulations or

any Violations, (i) the compliance of the John Street Property with any rent control or similar

law or regulation, and (j)  the layout, income, expenses, operation, agreements, licenses,

easements, instruments or documents of or in any way affecting the John Street Property.

Further, Purchaser acknowledges and agrees that, except as expressly set forth herein, Seller is

not bound by (and Purchaser has not relied upon) any verbal or written statements,

representations or any other information respecting the John Street Property furnished by Seller

or any employee, agent, consultant or other person representing or purportedly representing

Seller.  The provisions of this Section 7.3 shall survive the Closing.

    8.    <u>Closing Deliveries.</u>

    8.1    At or prior to the Closing, Seller shall make, have made or caused to be

made, the following deliveries:

    8.1.1    Seller shall execute, acknowledge and deliver to Purchaser a

bargain and sale deed with covenants against grantor's acts, sufficient to convey fee title to the

John Street Property subject to and in accordance with the provisions of this APA (the "<u>Deed</u>").

    8.1.2    Seller shall deliver to Purchaser a certificate, duly executed and

acknowledged by Seller, in accordance with Section 1445 of the Code.

    8.1.3    Seller shall deliver to the Title Company a certified copy of the

Bankruptcy Court Order confirming the Plan and approving the sale to Purchaser and a limited

liability company resolution authorizing the transaction contemplated herein and the execution and delivery of the documents required to be executed and delivered hereunder.

8.1.4   To the extent applicable and without impairing that this sale shall be exempt under 11 U.S.C. §1146(a), the Parties shall otherwise execute, acknowledge and deliver the New York State TP-584 Form, the New York City Real Property Transfer Tax Form and Form RP-5217 (the "Equalization Form") in respect of the John Street Property (collectively, the "Transfer Tax Returns") without payment of any transfer and recording taxes. The payment of all transfer and recording taxes related to and/or arising from this transaction, other than filing fees for the deed, shall be exempt under 11 U.S.C. § 1146(a) and Purchaser shall reasonably cooperate with Seller in seeking the transfer tax exemption.

8.1.5   A title affidavit reasonably acceptable to Seller and the Title Company.

8.1.6   Only to the extent actually in the possession of Debtor, copies of any books, records and other documents relating to the John Street Property, including, without limitation, (a) licenses and permits relating to the John Street Property, (b) certificates, permits and licenses with respect to the John Street Property issued by any governmental authority, (c) survey, architectural plans, building plans or specifications pertaining to the Property and (d) copies of any warranties and guaranties with respect to the John Street Property or any part thereof.

8.1.7   An assignment of the existing mortgage(s) on the John Street Property to Purchaser's lender, in recordable form, without cost to Purchaser other than existing lender's counsel's reasonable legal fees.

16-12043-shl  Doc 124-3  Filed 06/29/22  Entered 06/29/22 11:23:56  Exhibit A Claim
15-10368-shl  Doc 143-2  Filed 10/23/15  Entered 10/23/15 15:21:46  Exhibit B -
APA  Pg 29 of 47

Pg 35 of 53

8.1.8  A bill of sale, conveying and transferring to Purchaser all right, title and interest of Seller, if any, in and to the Personal Property at the John Street Property.

8.1.9  Seller shall execute and deliver such documents as local custom may require to effectuate the change of ownership on the City's ownership records or otherwise reasonably requested by the Title Company in connection with the conveyance of the John Street Property.

8.1.10  Seller shall take such steps as may be reasonably necessary to effectuate the release of any and all of the Liens and Encumbrances on the John Street Property consistent with bankruptcy law and the Seller's rights to object to any claims in bankruptcy.

8.2  At or prior to the Closing, Purchaser or its agents shall make, have made or caused to be made, the following deliveries:

8.2.1  Purchaser shall pay to Seller the balance of the Purchase Price required pursuant to Section 3.2 hereof.

8.2.2  Purchaser shall execute, acknowledge and deliver to Seller a counterpart of the Transfer Tax Returns, as necessary.

8.2.3  Purchaser shall execute, acknowledge and deliver to Seller a counterpart of the Equalization Form.

8.2.4  Such other instruments, agreements or other documents as may be reasonably necessary or convenient to effectuate the provisions of this APA as permitted by the Bankruptcy Court.

8.3  Seller and Purchaser, no later than three (3) Business Days prior to at the Closing, shall prepare, subject to all the terms and provisions of this APA, (a) a mutually acceptable closing statement setting forth, inter alia, the closing adjustments and material

monetary terms of the transaction contemplated hereby and (b) such other instruments and documents as may be reasonably required to effectuate the consummation of the transactions described in this APA. The Closing Statement shall be binding and conclusive on Purchaser and Seller (absent manifest error) and at the Closing, the Closing Statement shall be executed and delivered by the parties hereto. Subject to the provisions of Section 6 of this APA, any errors in the Closing Statement shall be corrected post-Closing.

9.    Interim Responsibilities.

9.1    Seller agrees that during the period between the date hereof and the Closing Date:

9.1.1 Seller will not remove any fixtures, machinery, personal property or equipment from the John Street Property.

9.1.2  Seller will not lease any portion of the John Street Property or grant any occupancy right to any person or transfer any personal property between the date hereof and the Closing Date.

9.1.3  Seller will not enter into any service contracts (other than those which can be terminated upon thirty days' notice) and will not enter into any union agreements or hire any employees.

9.1.4  Seller will not grant any lien or execute any instrument which, if recorded, would encumber the John Street Property in any manner (or cause any such instrument to be recorded).

9.1.5.  Seller shall promptly after the delivery or receipt thereof deliver to Purchaser copies of all notices, if any, relating to Hazardous Materials affecting the John Street Property or any actual or threatened condemnation of the John Street Property or any portion

thereof given by or on behalf of any federal, state or local agency, and copies of all other correspondence sent, filed, served on or received by Seller from any federal, state or local agency affecting the John Street Property from and after the date hereof.

9.1.6   Seller shall not settle or compromise or agree to any settlement or compromise of any insurance or condemnation claim or award without the prior written consent of Purchaser.

9.1.7   Seller will maintain casualty insurance on the John Street Property in commercially reasonable amounts on policies issued by commercially reasonable carriers which policies contain commercially reasonable terms.

9.1.8   Other than the Bankruptcy Court Settlement, Seller shall not enter into any agreement which would require the consent of a third party to this APA or the transactions contemplated by this APA.

9.2   Purchaser shall be afforded access to the John Street Property between the date hereof and the Closing.  No invasive testing may be conducted by the Purchaser without Seller's prior written consent.

10.   Limitation on Liability of Parties.

10.1   In the event that the Purchaser defaults in the performance of Purchaser's obligations under this APA and the Closing does not occur as a result thereof (a "Purchaser Default"), Seller shall be entitled, as its sole and exclusive remedy, to retain the Deposit and any interest earned thereon as and for full and complete liquidated and agreed damages for Purchaser's default, and thereupon Purchaser shall be released from any further liability to Seller hereunder, except for those provisions hereof intended to survive the termination of this APA. SELLER AND PURCHASER AGREE THAT IT WOULD BE IMPRACTICAL AND

EXTREMELY DIFFICULT TO ESTIMATE THE DAMAGES WHICH SELLER MAY SUFFER UPON A PURCHASER DEFAULT AND THAT THE DEPOSIT AND ANY INTEREST EARNED THEREON, AS THE CASE MAY BE, REPRESENTS A REASONABLE ESTIMATE OF THE TOTAL NET DETRIMENT THAT SELLER WOULD SUFFER UPON A PURCHASER DEFAULT. SUCH LIQUIDATED AND AGREED DAMAGES ARE NOT INTENDED AS A FORFEITURE OR A PENALTY WITHIN THE MEANING OF APPLICABLE LAW.

10.2    Subject to the provisions of Section 3.2.2 hereof, in the event that the Bankruptcy Court determines that the Seller has defaulted in the performance of Seller's obligations under this APA, Purchaser shall be entitled to (a) instruct Escrow Agent to pay to Purchaser the Deposit with the interest earned thereon, if any, (a "Deposit Return"), upon which Seller shall be released from any further liability to Purchaser hereunder for any other damages resulting from such default, and/or (b) seek specific performance of Seller's obligations hereunder in the Bankruptcy Court (or, to the extent permitted by applicable bankruptcy law, in any appropriate court).

11.    Fire or Other Casualty, Condemnation.

11.1    Seller agrees  to give Purchaser reasonably prompt notice of any fire or other casualty occurring at the John Street Property of which Seller obtains knowledge (which notice shall include a description of the subject damage, a reasonably detailed description of the work which is required in order to repair said damage and restore the John Street Property to its condition prior to such casualty and the costs of such repairs), between the date hereof and the date of the Closing, or of any actual or threatened condemnation of all or any part of the John Street Property of which Seller obtains knowledge.

11.2    If all or any part of the existing structure is materially damaged by fire or other casualty occurring on or after the date hereof and prior to the Closing Date, then, if the estimated cost to repair or restore is less than or equal to $1,000,000 and if the estimated time substantially to complete such repair or restoration is three (3) months or less (each as reasonably determined by an engineer selected by Purchaser), neither party shall have the right to terminate this APA and the parties shall nonetheless consummate this transaction in accordance with this APA, without any abatement of the Purchase Price (except as may be set forth in the following sentence) or any liability or obligation on the part of Seller by reason of such destruction or damage.  In such event, Seller shall assign to Purchaser and Purchaser shall have the right to make a claim for and to retain any casualty insurance proceeds received under the casualty insurance policies in effect with respect to the John Street Property on account of such physical damage or destruction, and Purchaser shall receive a credit against the cash due at Closing for the amount of the deductible on such casualty insurance policy.

11.3    If the estimated cost of repair or restoration exceeds $1,000,000 or if the estimated time substantially to complete such repair or restoration exceeds three (3) months (each as reasonably determined by an engineer selected by Purchaser and reasonably acceptable to Seller, and without prejudice to the right of any party to seek relief from the Bankruptcy Court), Purchaser shall have the option, exercisable on or prior to the Casualty Election Date (as defined in Section 11.4 below), time being of the essence, to terminate this APA by delivering notice of such termination to Seller, whereupon the Deposit (together with any interest accrued thereon) shall be returned to Purchaser and this APA shall be deemed cancelled and of no further force or effect, and neither party shall have any further rights or liabilities against or to the other except for such provisions which are expressly provided in this APA to survive the termination

32

hereof. If a fire or other casualty described in this Section 11.3 occurs and Purchaser shall not timely elect to terminate this APA, then Purchaser and Seller shall consummate this transaction in accordance with the provisions of Section 11.2 hereof (as if the cost of repair or restoration was less than or equal to $1,000,000).

11.4    "Casualty Election Date" means the tenth (10th) business day following Purchaser's receipt of the estimates as described in this Section 11.

11.5    If prior to the Closing any part of the John Street Property is taken (other than a temporary taking) or if Seller shall receive an official notice from any governmental authority having eminent domain power over the John Street Property of its intention to take, by eminent domain proceeding, any part of the John Street Property (a "Taking"), then:

(i)    if such Taking involves $1,000,000 or less of value of the Building (as reasonably determined by an architect or engineer selected by Purchaser and reasonably acceptable to Seller, and without prejudice to the right of any party to seek relief from the Bankruptcy Court), neither party shall have any right to terminate this APA, and the parties shall nonetheless consummate the transaction in accordance with this APA, without any abatement of the Purchase Price or any liability or obligation on the part of Seller by reason of such Taking; provided, however, that Seller shall on the Closing Date (a) assign and remit to Purchaser the net proceeds of any award or other proceeds of such Taking which may have been collected by Seller as a result of such Taking, or (b) if no award or other proceeds shall have been collected, deliver to Purchaser an assignment of Seller's right to any such award or other proceeds which may be payable to Seller as a result of such Taking.

(ii)    if such Taking involves more than $1,000,000 of value of the Building (as reasonably determined by an architect or engineer selected by Purchaser and reasonably

acceptable to Seller, and without prejudice to the right of any party to seek relief from the Bankruptcy Court), Purchaser shall have the option exercisable prior to or on the tenth (10th) business day following Purchaser's receipt of such engineer's or architect's determination of the rentable area of the Building subject to the Taking and a reasonably detailed description thereof to terminate this APA by delivery of notice to the other party, whereupon the Deposit (together with any interest earned thereon) shall be returned to Purchaser and this APA shall be deemed cancelled and of no further force or effect, and neither party shall have any further rights or liabilities against or to the other except pursuant to the provisions of this APA which are expressly permitted to survive the termination hereof.  If the Taking described in this clause (ii) shall occur and Purchaser shall not timely elect to terminate this APA, then Purchaser and Seller shall consummate this transaction in accordance with the provisions of clause (i) (as if the Taking involves $1,000,000 of value or less).

11.6   Nothing contained in this Section 11 shall be construed to impose upon Seller any obligation to repair any damage or destruction caused by fire or other casualty or condemnation.

12.   Brokerage.

Purchaser and Seller each represent and warrant that it has not dealt with any broker, consultant, finder or like agent who might be entitled to a commission or compensation on account of introducing the parties hereto, the negotiation or execution of this APA or the closing of the transactions contemplated hereby after execution of the this APA.  Seller shall engage a broker ("Broker") pursuant to a separate agreement between Seller and Broker as approved by the Bankruptcy Court for the purposes of marketing the John Street Property for sale by auction as provided below.  Seller shall pay Broker any commission and/or fee which

may be owed, and shall indemnify Purchaser for all losses, claims and damages which Purchaser may incur by reason of the failure to pay same. Purchaser and Seller agree to indemnify and hold each other and the Related Parties of the other harmless from and against all claims, losses, liabilities and expenses (including, without limitation, reasonable attorney's fees and disbursements) resulting from a breach of the representations contained in the first sentence of this paragraph. Seller shall seek a determination in the Confirmation Order that no other broker, consultant, finder or like agent is entitled to a commission or compensation in connection with this transaction except as provided in the Procedures Motion (as defined below). The provisions of this Section 12 shall survive the Closing or the termination of this APA.

13.    Special Provisions for Bankruptcy Court Approval.

13.1    Seller's obligations under this APA are entirely subject to, and contingent upon approval of this APA and the transactions contemplated in this APA by the Bankruptcy Court, to be memorialized in the Confirmation Order. Purchaser acknowledges that the Seller will submit this APA, seeking approval of the terms and conditions of this APA and authorization for the sale of the John Street Property, to the Bankruptcy Court for approval pursuant to a motion (the "Procedures Motion") requesting that the Court (i) establish bidding procedures, (ii) approve the Break-up Fee (as defined below) and (iii) schedule an auction (the "Auction"). Seller shall use its best efforts to obtain approval of the Procedures Motion, including the Break-up Fee. Following the Auction, the Seller will seek the Bankruptcy Court's approval of the sale pursuant to the Plan so a closing can occur no later than December 30, 2015.

13.2    Pursuant to 11 U.S.C. Section 363(b) and (f) and 1123(a)(5)(D) and 1125(b)(4), the Bankruptcy Court's approval of this APA and subsequent confirmation of the Plan is required before the sale contemplated hereby shall be consummated; provided, however,

the actual Closing shall occur on a post-confirmation basis. Purchaser acknowledges and agrees that the Bankruptcy Court will consider higher or better offers for the John Street Property as part of the Auction; provided, however, Seller will request that the Bankruptcy Court approve a break-up fee of $400,000 (the "Break-up Fee") in favor of the Purchaser. The request for approval of the Break-Up Fee shall be made in connection with the Procedures Motion to be filed by Seller referenced above seeking to (i) approve this APA as a "Stalking-Horse contract", subject to competitive bidding and otherwise providing for the Auction based upon the Stalking-Horse contract, free and clear of all claims, liens, taxes and non-permitted encumbrances under 11 U.S.C. § 363 (b) and (f); (ii) scheduling a sale approval hearing; and (iii) approving the form and manner of notice thereof. In deference to the requested Break-up Fee, Seller shall also request that the bidding procedures contain an initial overbid of $73,600,000 with bidding thereafter at intervals of $200,000. The Break-up Fee shall be payable to the Purchaser only in the event the Bankruptcy Court enters an order approving a sale of the John Street Property to any party other than the Purchaser. The Break-up Fee shall constitute an allowed administrative expense claim pursuant to §503(b) of the Bankruptcy Code, and shall be payable to Purchaser from the proceeds of any alternative sale transaction.

13.3   [Omitted]

13.4   Seller shall not take any action which may result in the, or fail to take any action the intent of which failure to act would result in the, reversal, voiding, modification or staying of the Order approving the bidding procedures.

14.   <u>Conditions Precedent to Purchaser's Obligation to Close.</u>

14.1   Notwithstanding any other provision in this APA, Purchaser's obligations to consummate the transactions described in this APA, and to take the actions required to be

36

taken by Purchaser at the Closing, is subject to the satisfaction, at or prior to such Closing, of each of the following conditions (any of which may be waived by Purchaser, in whole or in part, in its sole discretion):

> (a)   Seller shall have taken all action and delivered all documents required of Seller at the Closing and shall have complied with all covenants in this APA to be complied with by Seller on or prior to Closing.

> (b)   All representations and warranties made by Seller in this APA shall be materially true and correct as of the Closing Date.

> (c)   The Title Company shall be willing to insure title to the John Street Property pursuant to an ALTA Owner's Policy of Title Insurance in the amount of the Purchase Price at regular rates and without additional premium, subject only to the Permitted Exceptions and as otherwise provided in this APA.

> (d)   The Break-up Fee, the form of this APA and bid procedures reasonably acceptable to Purchaser shall be approved by the Bankruptcy Court.

> (f)   The sale of the John Street Property to Purchaser shall be approved by the Bankruptcy court pursuant to the Confirmation Order and the Seller shall receive the transfer tax exemptions provided by 11 U.S.C. § 1146(a).

> (g)   An Order shall be entered to allow the Closing to occur no later than December 30, 2015, unless the Purchaser exercises an option to extend the Closing to a later Closing Date up to January 20, 2016 (time of the essence).

15.   <u>Conditions Precedent to Seller's Obligations to Close.</u>

15.1    Seller's obligation to consummate the transactions described in this APA, and to take the actions required to be taken by Seller at the closing, is subject to the satisfaction, at or prior to such closing, of each of the following conditions.

(a)    Purchaser shall have executed and delivered to Seller all of the documents, shall have paid all sums of money and shall have taken or caused to be taken all of the other action required of Purchaser in this APA.

(b)    The Purchaser is deemed to have made the highest and best offer for the John Street Property in the Auction and the sale is approved by the Bankruptcy Court pursuant to an Order Confirming the Plan.

16.    <u>Notices.</u>

Except as otherwise provided in this APA, all notices, demands, requests, consents, approvals or other communications (for the purposes of this Section collectively referred to as "<u>Notices</u>") required or permitted to be given hereunder or which are given with respect to this APA, in order to constitute effective notice to the other party, shall be in writing and shall be deemed to have been given when (a) personally delivered with signed delivery receipt obtained, or (b) upon receipt, when sent by prepaid reputable overnight courier, in each case addressed as follows:

If to Seller, to:

HS 45 John LLC
c/o Orin Management
37-04 Parsons Boulevard
Flushing, NY 11354

And

45 John Lofts LLC
c/o Peter R. Silverman, Esq.
Silverman Shin Byrne & Gilchrest PLLC
381 Park Avenue South, 16th Floor
New York, New York 10016

with a copy to:

Kevin J. Nash, Esq.
Goldberg Weprin Finkel Goldstein LLP
1501 Broadway, 22nd Floor
New York, NY 10036

If to Purchaser, to:

45 John NY LLC 150 Broadway, Suite 900
New York, NY 10038

with a copy to:

Schneider Law Group
Attn: Dov Gal, Esq.
150 Broadway
Suite 900
New York, NY 10038

If to Escrow Agent, to:

Goldberg Weprin Finkel Goldstein LLP
1501 Broadway, 22nd Floor
New York, NY 10036
Attn: Kevin J. Nash, Esq.

The foregoing addresses may be changed by a party by giving notice of such change to the other

parties in accordance with the provisions of this Section. Notices shall be valid only if served in

the manner provided above. Notices may be sent by the attorneys for the respective parties and

each such Notice so served shall have the same force and effect as if sent by such party.

17.    Survival; Governing Law.

Except as otherwise expressly set forth in this APA, the provisions of this APA shall not survive the Closing provided for herein. This APA shall be governed by, interpreted under, construed and enforced in accordance with, the laws of the State of New York and may be enforced only before the Bankruptcy Court (or, to the extent permitted by applicable bankruptcy law, in any appropriate court).

18.    Counterparts; Captions.

This APA may be executed in counterparts, each of which shall be deemed an original. The captions are for convenience of reference only and shall not affect the construction to be given any of the provisions hereof.

19.    Entire Agreement; No Third Party Beneficiaries.

This APA (including all exhibits annexed hereto), contains the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior understandings, if any, with respect thereto. This APA may not be modified, changed, supplemented or terminated, nor may any obligations hereunder be waived, except by written instrument signed by the party to be charged or by its agent duly authorized in writing or as otherwise expressly permitted herein. The parties do not intend to confer any benefit hereunder on any person, firm or corporation other than the parties hereto. The provisions of this Section 19 shall survive the Closing.

20.    Waivers; Extensions.

No waiver of any breach of any agreement or provision herein contained shall be deemed a waiver of any preceding or succeeding breach thereof or of any other breach. No

extension of time for performance of any obligations or acts shall be deemed an extension of the time for performance of any other obligations or acts.

21.   <u>Pronouns, Joint and Several Liability.</u>

All pronouns and any variations thereof shall be deemed to refer to the masculine, feminine or neuter, singular or plural, as the identity of the parties may require. If Purchaser consists of two or more parties, the liability of such parties shall be joint and several.


22.   <u>Successors and Assigns.</u>

This APA shall bind and inure to the benefit of Seller, Purchaser and their respective permitted successors and permitted assigns.

23.   <u>Escrow.</u>

As requested, Escrow Agent shall provide the Seller and Purchaser with a proposed form of escrow agreement containing customary terms and conditions (which terms and conditions must be acceptable to Seller and Purchaser (but Seller's and Purchaser's approval of such terms and conditions shall not be unreasonably withheld), which escrow agreement shall contain provisions for the release from escrow of the Deposit to the Purchaser, subject to order of the Bankruptcy Court, without requiring an instruction of the Seller, as contemplated by Sections 2.3 and 3.2.2 and 10.2.   The Escrow Agreement will provide that the Parties and the Escrow Agent submit to the jurisdiction of the Bankruptcy Court, Southern District of New York in the event that there is any dispute about the Deposit or the conduct of the Escrow Agent.

24.   <u>Tax Proceedings.</u>

There are no pending proceedings for the reduction of the assessed valuation of the John Street Property.

25.   <u>Transfer Tax Exemption.</u>

This transaction and all orders approving the same shall provide that consistent

with the Supreme Court's interpretation of Section 1146(a) of the Bankruptcy Code in <u>Florida</u>

<u>Department of Revenue v. Piccadilly Cafeterias, Inc.</u>, 128 S.Ct. 2326 (2008), that the transfer of

the John Street Property shall be made in furtherance of a confirmed plan of reorganization and

shall be exempt from payment of all transfer and recording taxes otherwise owed to a local, state

or federal government unit and shall provide that the recorder of deeds or similar official shall

accept such deed and other instruments given in connection therewith, including any purchase

money mortgage delivered by Purchaser, for recording without requiring the payment of any

filing fees, documentary stamp taxes, transfer taxes, mortgage taxes or similar taxes, including

the New York City RPT and the New York State TP 584.  Additionally, the Debtor will seek an

order exempting the transfer from any mortgage recording or transfer tax for any mortgages

transferred to Purchaser or any mortgage given to secure a loan made to Purchaser in connection

with the acquisition of the John Street Property or any related construction loan mortgage.

**IN WITNESS WHEREOF,** the parties have duly executed this APA as of the day and

year first above written.

**SELLER:**
**HS 45 John LLC**


By:_____


**45 John Lofts LLC**


By:_____


42

IN WITNESS WHEREOF, the parties have duly executed this APA as of the day and year first above written.

**SELLER:**
**HS 45 John LLC**

By:_____

**45 John Lofts LLC**

By:_____

**PURCHASER:**
**45 John NY LLC**

By:_____
Alexander Levin, Authorized Signatory

**ESCROW AGENT:**

SOLELY FOR THE PURPOSES OF
CONFIRMING THE PROVISIONS OF SECTION 23:

GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP

By: _____

43

PURCHASER:
45 John NY LLC
By:_____

ESCROW AGENT:

SOLELY FOR THE PURPOSES OF
CONFIRMING THE PROVISIONS OF SECTION 23:

GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP


By: _____

## EXHIBITS

Exhibit A                          Legal Description

Exhibit B                          Bargain and Sale Deed

X:\GWFG\New Data\Yen\Word\HS 45 John LLC\Agreement Of Purchase And Sale 10-19-15 (Capital) V2 (Execution copy).Docx

44

SCHNEIDER LAW GROUP
NEW YORK IOLA TRUST ACCOUNT
150 BROADWAY, SUITE 900
NEW YORK, NY 10038-4348

1-32/210 NY
19047

10/19/2015

PAY TO THE
ORDER OF____ Goldberg Weprin Finkel Goldstein LLP *as escrow agent* _____ $ **7,000,000.00

Seven Million and 00/100********************************************************************************* DOLLARS

Goldberg Weprin Finkel Goldstein LLP

MEMO *45 John Street, escrow deposit*

AUTHORIZED SIGNATURE